**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, 8 Otis Place, Scituate, Massachusetts 02066,<br><br>ATLANTIC OFFSHORE LOBSTERMEN'S ASSOCIATION, 221 Third Street, Newport, Rhode Island 02840,<br><br>LONG ISLAND COMMERCIAL FISHING ASSOCIATION, P.O. Box 191, Montauk, New York 11954,<br><br>GARDEN STATE SEAFOOD ASSOCIATION, 212 West State Street, Trenton, New Jersey 08608, and<br><br>RHODE ISLAND FISHERMEN'S ALLIANCE, P.O. Box 337, East Greenwich, Rhode Island 02818,<br><br>*Plaintiffs*,<br>v.<br><br>WILBUR ROSS, in his official capacity as Secretary of Department of Commerce, 1401 Constitution Avenue, N.W., Washington, D.C. 20230,<br><br>BENJAMIN FRIEDMAN, in his official capacity as Deputy Undersecretary for Operations for the National Oceanic and Atmospheric Administration, 1401 Constitution Avenue N.W., Room 5128, Washington, D.C. 20230,<br><br>RYAN ZINKE, in his official capacity as Secretary of the Department of the Interior, 1849 C Street, N.W., Washington, D.C. 20240,<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, 1600 Pennsylvania Avenue N.W., Washington, D.C. 20006, and<br><br>JANE DOE, in her official capacity as Chairman | Case No. 17-cv-00406 (JEB)<br><br>**Memorandum of Law in Support of Defendant-Intervenor Applicants' Motion to Intervene** |

for the Council on Environmental Quality, 722 Jackson Place, N.W., Washington, D.C. 20506,

*Defendants*,

and

NATURAL RESOURCES DEFENSE COUNCIL, INC., 40 West 20th Street, 11th Floor, New York, New York 10011,

CONSERVATION LAW FOUNDATION, 62 Summer Street, Boston, Massachusetts 02110,

CENTER FOR BIOLOGICAL DIVERSITY, 378 N. Main Avenue, Tucson, Arizona 85701, and

R. ZACK KLYVER, 25 Federal Street, Bar Harbor, Maine 04609,

*Defendant-Intervenor Applicants.*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT-INTERVENOR APPLICANTS' MOTION TO INTERVENE**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 2

I. The Northeast Canyons and Seamounts Marine National Monument .......... 2

II. Plaintiffs' complaint .......... 7

III. Applicants for intervention .......... 7

ARGUMENT .......... 12

I. Applicants have standing to intervene as defendants .......... 13

A. Organizational Applicants .......... 14

B. Mr. Klyver .......... 18

II. Applicants are entitled to intervene as of right .......... 19

A. Applicants' motion to intervene is timely .......... 19

B. Applicants and their members have legally protected interests at stake .......... 20

C. If successful, Plaintiffs' actions would impair Applicants' interests .......... 21

D. Applicants' interests may not be adequately represented by Federal Defendants .......... 22

III. Alternatively, the Court should permit Applicants to intervene permissively .......... 24

CONCLUSION .......... 27

## TABLE OF AUTHORITIES

### CASES

*Acree v. Republic of Iraq*,

370 F.3d 41 (D.C. Cir. 2004) ........................................................................ 24

*Ctr. for Biological Diversity v. Blank*,

933 F. Supp. 2d 125 (D.D.C. 2013) ............................................................... 19

*Cty. of San Miguel v. MacDonald*,

244 F.R.D. 36 (D.D.C. 2007) ........................................................................ 20

**Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*,

788 F.3d 312 (D.C. Cir. 2015) ...................................................... 13, 17, 20, 22

*Dimond v. Dist. of Columbia*,

792 F.2d 179 (D.C. Cir. 1986) ................................................................. 22, 23

*Defs. of Wildlife v. Perciasepe*,

714 F.3d 1317 (D.C. Cir. 2013) ..................................................................... 13

*Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr., Inc.*,

146 F.3d 1042 (D.C. Cir. 1998) ..................................................................... 24

*Fed. Forest Res. Coal. v. Vilsack*,

100 F. Supp. 3d 21 (D.D.C. 2015) ................................................................. 23

*Forest Cty. Potawatomi Cmty. v. United States*,

317 F.R.D. 6 (D.D.C. 2016) ..................................................................... 14, 16

*Foster v. Gueory*,

655 F.2d 1319 (D.C. Cir. 1981) ..................................................................... 21

*Friends of Animals v. Kempthorne*,

452 F. Supp. 2d 64 (D.D.C. 2006) ........................................................ 23

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

528 U.S. 167 (2000) ........................................................................ 14, 17

**Fund for Animals, Inc. v. Norton*,

322 F.3d 728 (D.C. Cir. 2003) ........................................... 14, 19, 20, 21, 22, 23

*Guindon v. Pritzker*,

31 F. Supp. 3d 169 (D.D.C. 2014) ........................................................ 23

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,

478 U.S. 221 (1986) ........................................................................ 17, 19

*Kleissler v. U.S. Forest Serv.*,

157 F.3d 964 (3d Cir. 1998) ............................................................... 23

*Kootenai Tribe of Idaho v. Veneman*,

313 F.3d 1094 (9th Cir. 2002) ............................................................ 23

*Military Toxics Project v. EPA*,

146 F.3d 948 (D.C. Cir. 1998) ............................................................. 14

*Mountain States Legal Found. v. Bush*, No. 00-2072 (D.D.C. Nov. 16, 2001)

*aff'd*, 306 F.3d 1132 (D.C. Cir. 2002) ................................................... 26

*Nat. Res. Def. Council v. Costle*,

561 F.2d 904 (D.C. Cir. 1977) ............................................................. 24

*People for the Ethical Treatment of Animals v. Babbitt*,

151 F.R.D. 6 (D.D.C. 1993) ................................................................ 23

*Republic of Iraq v. Beatry*,

556 U.S. 848 (2009) .......................................................................................... 24

**Sierra Club v. Jewell*,

764 F.3d 1 (D.C. Cir. 2014) ........................................................................ 16, 19

*Smoke v. Norton*,

252 F.3d 468 (D.C. Cir. 2001) .......................................................................... 19

*Trbovich v. United Mine Workers*,

404 U.S. 528 (1972) .......................................................................................... 22

*United States v. Am. Tel. & Tel. Co.*,

642 F.2d 1285 (D.C. Cir. 1980) ............................................................ 13, 20, 22

*Utah Ass'n of Ctys. v. Clinton*,

255 F.3d 1246 (10th Cir. 2001) ......................................................................... 21

*Wilderness Soc'y v. Babbitt*,

104 F. Supp. 2d 10 (D.D.C. 2000) ..................................................................... 19

*Wilderness Soc'y v. U.S. Forest Serv.*,

630 F.3d 1173 (9th Cir. 2011) ........................................................................... 23

*Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*,

840 F.2d 72 (D.C. Cir. 1988) ............................................................................. 13

## PRESIDENTIAL PROCLAMATIONS

Pres. Proc. No. 8031, Establishment of the Northwestern Hawaiian Islands
Marine National Monument, 71 Fed. Reg. 36443 (June 15, 2006) ............................. 6

Pres. Proc. No. 8335, Establishment of the Marianas Trench Marine National Monument, 74 Fed. Reg. 1557 (Jan. 6, 2009) ........ 6

Pres. Proc. No. 8336, Establishment of the Pacific Remote Islands Marine National Monument, 74 Fed. Reg. 1565 (Jan. 6, 2009) ........ 6

Pres. Proc. No. 8337, Establishment of the Rose Atoll Marine National Monument, 74 Fed. Reg. 1577 (Jan. 6, 2009) ........ 6

Pres. Proc. No. 9173, Pacific Remote Islands Marine National Monument Expansion, 79 Fed. Reg. 58645 (Sept. 25, 2014) ........ 6

Pres. Proc. No. 9478, Papahānaumokuākea Marine National Monument Expansion, 81 Fed. Reg. 60227 (Aug. 26, 2016) ........ 6

*Pres. Proc. No. 9496, Northeast Canyons and Seamounts Marine National Monument, 81 Fed. Reg. 65161 (Sept. 15, 2016) ........ 5, 6

**STATUTES AND OTHER AUTHORITIES**

54 U.S.C. § 320301 ........ 5

Fed. R. Civ. P. 24(a)(2) ........ 20, 21

Fed. R. Civ. P. 24(b) ........ 24

Senate Confirmation Hearing for Ryan Zinke (Jan. 17, 2017) ........ 24

Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1914 (3d ed.) ........ 13

## INTRODUCTION

The Natural Resources Defense Council, Conservation Law Foundation, Center for Biological Diversity, and Mr. R. Zack Klyver ("Applicants") seek to intervene as defendants in this case to protect their interests in the Northeast Canyons and Seamounts Marine National Monument ("the Monument"). Pursuant to Local Civil Rule 7(m), counsel for Applicants contacted Plaintiffs' counsel on March 24 and 28, 2017, to ascertain their position on this motion prior to filing. Although they corresponded, Plaintiffs' counsel has not taken a position on this motion. Counsel for Federal Defendants have not yet appeared in this case. Applicants' counsel contacted the U.S. Department of Justice on March 24 and 28, 2017, to inquire into Federal Defendants' position on this motion. Applicants' counsel spoke with a receptionist who advised that the Department had not yet assigned an attorney to this case, and therefore Applicants' counsel was unable to ascertain Federal Defendants' position on this motion.

This case involves a challenge to President Obama's lawful designation of the Northeast Canyons and Seamounts Marine National Monument, an area off the coast of Cape Cod with extraordinary scientific and ecological importance. The Monument encompasses habitat for a wide array of sea life, including endangered sperm whales, seabirds, and rare deep-sea corals, some over a thousand years old. If successful, Plaintiffs' lawsuit would re-open this area to all commercial fishing, exposing the unique and fragile underwater ecosystems found there to irreversible damage. It could also expose this area to future impacts from offshore oil and gas

leasing and deep sea-bed mining. Applicants and their members have an interest in ensuring the continued protection of this national treasure. For the reasons set forth below, Applicants' motion to intervene should be granted.

## BACKGROUND

### I. The Northeast Canyons and Seamounts Marine National Monument

Approximately 130 miles off the coast of Cape Cod, Massachusetts, lies a cluster of four extinct undersea volcanoes (known as seamounts) and three undersea canyons, each one deeper than the Grand Canyon, that cut into the continental shelf. The dramatic terrain of these canyons and seamounts, the current patterns shaped by these features, the biological richness of the water column ecosystems created by these features, and a wide diversity of marine habitats all combine to generate a unique three-dimensional biologic hotspot that offers food, shelter, and nursery habitat to an exceptional range of endemic and migratory sea life in an otherwise austere environment. *See* Proposed Answer at ¶ 76. For scientists, the area is of unique, significant, and continuing interest, as it is populated with rare life forms, novel ecological relationships, and unusual geological phenomena. Although the canyons and seamount area has a storied history of scientific exploration and has been the focus of intense scientific investigation and study over the last half decade, scientists are only beginning to discover the wealth of biodiversity found here. *Id.* at ¶ 77. So far, scientists have found many different species of cold-water corals and other invertebrates living on the New England Seamounts and in the Atlantic canyons, including species that

have been found nowhere else on earth. *Id.* at ¶ 78. The area also hosts endangered sea turtles, sperm and beaked whales, and numerous species of seabirds, fish, and invertebrates. *Id.* at ¶ 79.

These deep-sea ecosystems are highly vulnerable to the types of damage caused by commercial fishing, seismic surveying, oil and gas drilling, and mining. *Id.* at ¶ 80. Deep-sea organisms tend to have longer lifespans and slower growth rates than their shallow-water counterparts, making it difficult for them to recover from human disturbances. *Id.* One pass of a large weighted trawl net (so-called bottom trawling) scraping along a canyon wall or the lowering and retrieving of heavy offshore crab or lobster pots, for example, can destroy corals that have been growing for hundreds or thousands of years. *Id.* at ¶ 81. Higher in the water column, small whales, dolphins, seabirds, and sea turtles can get caught in so-called longlines, which can extend thirty miles with thousands of hooks intended to catch swordfish and tuna. *Id.* at ¶ 82.

The Monument is an important feeding ground for a myriad of other species including seabirds such as puffins, gulls, shearwaters, storm petrels, gannets, skuas, and terns; pelagic species including whales, dolphins, and turtles; and migratory fish such as tuna and sharks. *Id.* at ¶ 83. Powerful currents created by the canyons lift nutrients to the surface, fueling plankton growth. *Id.* at ¶ 84. This explosion of plankton, the base of the food chain, attracts schools of small fish and the larger animals that prey on them. *Id.* As the effects of climate change and

habitat destruction stress these populations, the Monument plays an especially important role in ensuring the ocean's resilience. *Id.* at ¶ 122.

The ruggedness of the terrain and the depth of the canyons and seamounts have so far kept these ecosystems largely out of the reach of extractive industries. *Id.* at ¶ 85. For example, Applicants believe only approximately a half-dozen boats currently fish for lobsters or crabs in the Monument. However, as technology advances and the world's hunger grows for seafood, fossil fuels, and rare minerals, geography alone will not be enough to protect this area. *Id.*

For these reasons, the Applicants—together with a large coalition of stakeholders including the Pew Charitable Trusts, the Mystic and New England Aquariums, state and local political officials, over a hundred scientists, and numerous businesses, faith leaders, and recreational fishermen—called on the Obama Administration to confer permanent protection on the canyons and seamounts area. *Id.* at ¶¶ 86-87. Senator Richard Blumenthal and the entire Connecticut congressional delegation supported monument designation and submitted a formal proposal that encompassed seven major canyons and four seamounts. *Id.* at ¶ 88. The Obama Administration considered these requests for permanent protection of the canyons and seamounts, as well as opposing views, in an extensive year-long public process that included a public meeting in September 2015, several rounds of regional stakeholder meetings, including with commercial fishing interests and Applicants, and the opportunity to submit public comments through a web portal that was available for more than a year. *Id.* at ¶ 89. The

Obama Administration ultimately received more than 300,000 comments and letters in support of the monument designation, including letters from Applicants. *Id.* at ¶ 90.

On September 15, 2016, pursuant to his authority under the Antiquities Act, 54 U.S.C. § 320301, President Obama issued a proclamation designating the Northeast Canyons and Seamounts Marine National Monument. *See* Presidential Proclamation No. 9496, 81 Fed. Reg. 65161 (Sept. 15, 2016). The Monument encompasses the "[t]hree submarine canyons and . . . four undersea mountains . . . in the waters approximately 130 miles southeast of Cape Cod." *Id.* at 65161. In response to fishing industry input and in order to leave out more active fishing areas, the Monument contained only 40 percent of the total canyon and inter-canyon area, and it encompassed four fewer major canyons than did the Connecticut delegation's proposal. The Proclamation describes in detail "the canyons and seamounts themselves, and the natural resources and ecosystems in and around them," which it identifies as "objects of historic[al] and scientific interest." *Id.* The Proclamation incorporates a map identifying the approximately 4,913-square-mile area reserved in the Monument, which the President determined constitutes "the smallest area compatible with the proper care and management of the objects to be protected." *Id.* at 65163. The Monument is the first and only marine national monument off the continental United States, although it is not the only marine

monument; Presidents George W. Bush and Obama also designated monuments and monument expansions in the Pacific Ocean.[1]

President Obama's Proclamation confers crucial protections and use restrictions on the Monument. It directs the Secretary of Commerce (through the National Oceanic and Atmospheric Administration) and the Secretary of the Interior (through the U.S. Fish and Wildlife Service) to "share management responsibility for the monument," 81 Fed. Reg. at 65164, and it directs the Secretaries to "prohibit" a range of destructive activities, including "[e]xploring for, developing, or producing oil and gas or minerals," *id.* at 65164, and *"[f]ishing commercially*," *id.* at 65165 (emphasis added). Fishing for American lobster and red crab, however, may continue for seven years to allow a transition period for participants in these fisheries. *Id.* The Secretaries must prepare a joint management plan "within 3 years of the date of this proclamation." *Id.* at 65164. The use restrictions have gone into effect, with the ban on oil and gas exploration becoming effective immediately, *id.*, and the ban on commercial fishing becoming effective after 60 days. *See* ECF No. 1, Complaint at ¶ 63 ("On November 14, 2016, the proclamation's prohibition against all fishing in the area except for lobster and

---

[1] *See* Pres. Proc. No. 9478, Papahānaumokuākea Marine National Monument Expansion, 81 Fed. Reg. 60227 (Aug. 26, 2016); Pres. Proc. No. 9173, Pacific Remote Islands Marine National Monument Expansion, 79 Fed. Reg. 58645 (Sept. 25, 2014); Pres. Proc. No. 8337, Establishment of the Rose Atoll Marine National Monument, 74 Fed. Reg. 1577 (Jan. 6, 2009); Pres. Proc. No. 8336, Establishment of the Pacific Remote Islands Marine National Monument, 74 Fed. Reg. 1565 (Jan. 6, 2009); Pres. Proc. No. 8335, Establishment of the Marianas Trench Marine National Monument, 74 Fed. Reg. 1557 (Jan. 6, 2009); Pres. Proc. No. 8031, Establishment of the Northwestern Hawaiian Islands Marine National Monument, 71 Fed. Reg. 36443 (June 15, 2006).

red crab went into effect."). NOAA is currently developing proposed implementing regulations for the commercial fishing prohibitions.

## II. Plaintiffs' complaint

On March 7, 2017, Plaintiffs filed their complaint. All five plaintiffs are commercial fishing industry groups who allege their members' business interests have been or will be harmed by the creation of the Monument. They seek a declaration that "the Antiquities Act does not authorize the President to establish ocean monuments and that the . . . Monument is consequently unlawful," as well as an injunction "forbidding the [federal defendants] . . . from enforcing any of the proclamation's fishing prohibitions." Complaint at 16 (Request for Relief). The litigation is currently in its earliest stage; as of the date of this filing, Federal Defendants' counsel have not yet appeared, and no responsive pleadings or motions (except pro hac vice motions) have been filed.

## III. Applicants for intervention

Three of the undersigned Applicants for intervention are environmental non-profit organizations whose members' interests would be harmed if the Court were to grant Plaintiffs the relief they seek. The fourth Applicant for intervention is a professional naturalist whose own interests would be harmed if the Court granted Plaintiffs the relief they seek.

The Natural Resources Defense Council ("NRDC") is a non-profit environmental membership organization with hundreds of thousands of members nationwide, including tens of thousands of members in states along the

northeastern Atlantic seaboard. *See* Proposed Answer at ¶ 91. NRDC's mission is to safeguard the earth—its people, its plants and animals, and the natural systems on which all life depends. *Id.* at ¶ 92. For more than three decades, NRDC has advocated for the protection and long-term sustainability of our ocean resources on behalf of its members. A central part of NRDC's mission is to protect the nation's seas from pollution and exploitation and to conserve ocean natural treasures. *Id.* at ¶ 93. NRDC advocated for the creation of the Monument on behalf of its members. *Id.* at ¶ 94.

Among NRDC's members are scientists, recreational fishermen, and bird- and wildlife-watchers who travel to, use, and enjoy the area in and around the Monument for scientific study, education, wildlife viewing, aesthetic appreciation, and recreational fishing. *Id.* at ¶ 95. The Monument designation benefits their interests by protecting this area from the disruption and damage caused by commercial extractive activities, preserving the health, beauty, and research values of the ecosystems found here, and enabling NRDC's members to study, view, and enjoy the Monument area and the wildlife it supports in their largely pristine state. *Id.* at ¶ 96. NRDC's members also use and enjoy resources outside the Monument's boundaries that benefit from its protections; for example, NRDC members who participate in whale- and bird-watching trips enjoy viewing sperm whales and Atlantic puffins that rely on the Monument area for food, shelter, and migration purposes. *Id.* at ¶ 95.

The Conservation Law Foundation is ("CLF") is a private, not-for-profit organization dedicated, *inter alia*, to protecting marine wildlife and their habitats as well as other coastal and ocean resources in New England. *Id.* at ¶ 97. To further these goals, CLF undertakes litigation and other legal advocacy on behalf of its members' interests; educates its members on conservation issues and on threats, challenges, and solutions to New England's oceans so that they can exercise their rights and protect their interests in those resources; promotes public awareness; education, and citizen involvement in the conservation of marine wildlife and resources; and supports programs for the conservation of marine wildlife and their habitats. *Id.* at ¶¶ 98-99.

CLF has thousands of members in New England coastal states. *Id.* at ¶ 100. CLF's members use and enjoy fish and other marine resources off the New England coasts for recreational, educational, and scientific purposes. *Id.* CLF's members have a particular interest in landscape-scale marine protection of scientifically important places in the ocean off New England, such as the Monument, because government agencies have determined that such areas increase the ocean's resilience to the stresses and changes associated with excessive human carbon emissions and serve as scientific reference sites. *Id.* at ¶ 101. CLF has members who are professional scientists who have been engaged for years in longitudinal marine resource science in the areas within the Monument or with the animals associated with the Monument and nearby. *Id.* at ¶ 102. At least one of CLF's members has a professional interest in using the Monument area as a reference and

control site to study the regional changes to marine wildlife associated with climate change in areas not subjected to commercial fishing and other extractive activities. *Id.* at ¶ 103.

CLF also has members who plan paid offshore pelagic bird-watching trips to areas inside the Monument boundaries and its vicinity to observe offshore seabirds. *Id.* at ¶ 104. These members' interest in these trips has been heightened by the creation of the Monument and they want to continue planning and participating in observation trips in the Monument. *Id.* These members are interested in having an area where seabirds can forage and overwinter with minimum human disturbances. *Id.* The Monument designation benefits CLF's members' interests by protecting this area from the disruption and damage caused by commercial fishing and other commercial extractive activities, by preserving the health and beauty of the ecosystems found here for future study and scientific research, and by enabling CLF's members to study, view, and enjoy the Monument as the only large marine protected area off New England's shores. *Id.* at ¶ 105.

The Center for Biological Diversity ("the Center") is a non-profit environmental organization whose primary mission is to ensure the long-term health and viability of animal and plant communities around the world and to protect both the natural world and humans from environmental harms. *Id.* at ¶ 106. The Center has devoted considerable resources to ensuring the conservation and sound management of numerous marine species threatened by destructive activities

in our oceans, including unsustainable fishing practices and offshore oil and gas exploration, development, and production. *Id.* at ¶ 107.

Center members and staff regularly use the northwest Atlantic Ocean, including areas within and near the Monument, to view and study marine wildlife, including humpback, sperm, fin, and sei whales; loggerhead and leatherback turtles; sharks and other fish; and seabirds. *Id.* at ¶ 108. Commercial fishing, seismic exploration, oil and gas development, and mineral extraction harm many of the marine wildlife species that Center members enjoy viewing and studying, decreasing their likelihood of viewing these species in the wild. *Id.* at ¶ 109. The Monument's protections will reduce these harmful practices in the northwest Atlantic Ocean and thereby benefit the Center's members. Additionally, Center members and staff regularly participate in agency decision-making that affects marine life in the Atlantic Ocean. The Monument designation provides Center members and staff with the opportunity to participate in agency decision-making affecting marine life in the northwest Atlantic Ocean and with scientific information to use in their advocacy efforts, including comments on agency decision-making affecting marine life in the northwest Atlantic Ocean. *Id.* at ¶ 110.

R. Zack Klyver is the Head Naturalist for Bar Harbor Whale Watch Co., located in Bar Harbor, Maine. *Id.* at ¶ 111. Mr. Klyver has guided over 3,000 trips and taken over a half million passengers to see the whales, seabirds, and other marine wildlife of the northwest Atlantic Ocean. *Id.* at ¶ 112. He has traveled to observe marine wildlife in many different areas of the northwest Atlantic Ocean

and is considering making a trip to the Monument now that it has been established. *Id.* at ¶ 113. He regularly uses the waters of the northwest Atlantic Ocean to view, study, and educate others about marine wildlife, including wildlife that depends upon the Monument as habitat and feeding ground, such as humpback, sperm, fin, and sei whales, and many seabirds, including the population of Atlantic puffins that nest in the summer on six islands near Bar Harbor and overwinter in the Monument area. *Id.* at ¶ 114. The Monument's protections benefit Mr. Klyver's interests in viewing, studying, and educating others about whales and seabirds by providing those species with a stable, protected source of food, shelter, and passage for their migrations and movements, reducing the negative effects of commercial fishing and other extractive activities, and helping to ensure that they maintain healthy populations year after year. *Id.* at ¶ 115. The Monument designation will also facilitate scientific investigation and therefore provide Mr. Klyver with information to use when educating the public, commenting on agency decisions and advising agency decision-makers about marine life in the northwest Atlantic Ocean, as he does frequently in his capacity as a naturalist and as a member of the Atlantic herring advisory panel for the New England Fishery Management Council. *Id.* at ¶ 116.

## ARGUMENT

The Applicants seek leave to intervene as defendants to protect their own and their members' scientific, aesthetic, and recreational interests in maintaining the Monument's protections. As explained below, all four Applicants have standing to

intervene as defendants in this lawsuit, and they meet the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a) or, alternatively, the broad standard for permissive intervention under Rule 24(b).

## I. Applicants have standing to intervene as defendants

As an initial matter, Applicants have standing to intervene in this action as D.C. Circuit law requires. *See Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316, 320 (D.C. Cir. 2015). Organizational Applicants—NRDC, CLF, and the Center—all assert standing through their members. *See* Section I(A), *infra*. Mr. Klyver asserts standing in his own right. *See* Section I(B), *infra*.

Standing to intervene, like other aspects of intervention, "should be viewed on the tendered pleadings." *Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988). At the pleading stage, the allegations in the proposed complaint- or answer-in-intervention must be accepted as valid. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1291 (D.C. Cir. 1980); *see also Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013) (in assessing defendant-intervenor's standing, the court "treat[s] [the defendant-intervenor's] factual allegations as true and must grant [the defendant-intervenor] the benefit of all inferences that can be derived from the facts alleged" (internal quotation marks omitted)); 7C Charles Alan Wright et al., Federal Practice and Procedure § 1914 (3d ed.) ("The proposed pleading must state a good claim for relief or a good defense. . . . The pleading is construed liberally in favor of the pleader-intervenor and the court

will accept as true the well-pleaded allegations in the pleading." (footnotes omitted)). Applicants' averments in the proposed answer-in-intervention, filed concurrently with this motion, are sufficient to establish their standing.

**A. Organizational Applicants**

Each Organizational Applicant asserts standing through its members, which requires the Applicant to establish (1) that at least one of its "members would . . . have standing to sue in [her] own right," (2) that "the interests at stake are germane to the organization's purpose[s]," and (3) that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Organizational Applicants have satisfied these requirements.

First, the proposed answer alleges that Organizational Applicants' members would have standing to sue in their own right because (a) they face a concrete and particularized "injury in fact" that is likely to occur if Plaintiffs achieve the remedies they seek in this lawsuit, (b) the injury is "fairly traceable" to the remedies Plaintiffs seek, and (c) it is "likely that a decision favorable to the [Applicants] would prevent that loss from occurring." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) (approving of intervention where defendant-intervenors asserted that plaintiff's proposed remedy would cause them harm); *see also Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (same); *Forest Cty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 11-13 (D.D.C. 2016) (same).

As averred in the proposed answer, the Monument's protected status benefits Organizational Applicants' members in specific and concrete ways. The ban on commercial fishing and other commercial marine extractive activities enables them to use and enjoy the Monument area for their scientific, educational, aesthetic, and recreational purposes in its largely pristine state, without commercial fishing, oil and gas seismic exploration, drilling, or mining activities disrupting the natural environment or damaging the coral colonies and other marine life. Proposed Answer at ¶¶ 95-96, 100-05, 108-10, 117-19, 121, 123-24.

For example, Organizational Applicants' members have traveled to areas in and around the Monument to view, study, and otherwise enjoy its sea life and underwater formations in the past, and they wish to continue doing so in the future with the Monument's protections in place. *Id.* at ¶¶ 95-96, 102-05, 108-10, 118-19. Organizational Applicants' members also view, study, and enjoy wildlife that depends upon the Monument area as a feeding ground, migration route, or overwintering area; for example, members who engage in bird-watching and whale-watching in certain other areas benefit from the Monument because its protections help ensure the health and stability of the whale and seabird populations they enjoy observing. *Id.* at ¶¶ 83, 95, 104, 108, 121.

A decision by this Court to revoke or weaken the Monument's protections and open all or part of the area to commercial fishing or other disruptive commercial activities would directly harm Organizational Applicants' members' interests. Allowing commercial fishing in the Monument would result in bycatch of marine

wildlife, increase vessel traffic and noise, damage fragile corals, disturb feeding and foraging seabirds and marine mammals, entangle marine mammals and other sea life in fishing gear, impair the Monument's purposes as a scientific reference site, and modify the area's ecology, such as by depleting forage fish stocks and extracting large numbers of certain fish and other species in certain locations within the Monument area. *Id.* at ¶¶ 80-82, 109, 120. Organizational Applicants' members who are scientists would be specifically harmed by no longer being able to undertake the comparative studies they have planned to better understand the impacts of commercial fishing on these areas and their coral colonies, and to analyze the ecological and other benefits associated with landscape-scale closed marine areas, of which the Monument is the only one in the Atlantic. *Id.* at ¶¶ 80-82, 120, 123-24 (describing harms caused by commercial fishing); *cf.* Complaint at ¶¶ 10-13 (alleging that, but for the Monument designation, plaintiffs' members would be engaging in extensive commercial fishing activities in the Monument area).

Organizational Applicants have adequately alleged that their members "will be injured in fact by the setting aside" of the Monument designation. *Forest Cty.*, 317 F.R.D. at 11 (internal quotation marks omitted). Plaintiffs' requested remedy would re-open the Monument to commercial fishing, which would harm Organizational Applicants' members' "concrete interests in appreciating and studying the aesthetic features and [scientific] significance of a preserved and intact [Monument]." *Sierra Club v. Jewell*, 764 F.3d 1, 6 (D.C. Cir. 2014) (holding that organizations had standing to challenge removal of site from the National Register

of Historical Places); *cf. Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986) (plaintiff organizations "undoubtedly have alleged a sufficient 'injury in fact' in that the whale[-]watching and studying of their members will be adversely affected by continued whale harvesting").

Moreover, because these harms "suffice[] for standing purposes," causation and redressability "rationally follow[]." *Crossroads*, 788 F.3d at 316. The injuries described above are "directly traceable" to the outcome of this lawsuit and are redressable by a decision of this Court denying Plaintiffs' requested relief. *See id.* Organizational Applicants have therefore established that their members would have standing to sue in their own right.

Second, protecting their members' scientific, educational, aesthetic, and recreational interests in safeguarding the Monument area from the harms of commercial extractive activities is "germane" to Organizational Applicants' missions. *See Friends of the Earth*, 528 U.S. at 181. As described in the proposed answer, all three Organizational Applicants' missions include the goal of preserving healthy ocean ecosystems for the edification and enjoyment of all people, and preventing the harmful effects of extractive industries on fragile ocean communities. *See* Proposed Answer at ¶¶ 92-94, 97-99, 106-07. All three Organizational Applicants have worked intensively in the Atlantic Ocean in the vicinity of the Monument to prevent damage to these areas from extractive activities (including harmful fishing practices), *see id.*, and NRDC and CLF both

advocated for the creation of the Monument. *See id.* at ¶¶ 94, 99. Organizational Applicants' participation in this lawsuit is directly related to their missions.

Third, the relief Organizational Applicants seek does not require that their individual members participate in this litigation. Applicants ask the Court to dismiss the complaint and deny Plaintiffs' requests for relief. There is no need for Organizational Applicants' individual members to appear on their own behalf in this litigation.

### B. Mr. Klyver

Mr. Klyver has standing to participate in this lawsuit in his own right. As a naturalist who regularly observes, studies, and educates others about the ecology and sea life in the northwest Atlantic Ocean, he has a direct interest in maintaining the Monument's protections—particularly because of their importance to the whale species and puffins on which he focuses his activities. *See* Proposed Answer at ¶¶ 114-15. The Monument's protections are crucial to ensuring the health of these endangered and threatened species and their availability to be viewed, studied, and enjoyed. *Id.* at ¶ 83. Re-opening the Monument to commercial fishing, as Plaintiffs request, would harm the marine wildlife that Mr. Klyver enjoys viewing, studying, and educating others about in his personal and professional capacities, decreasing the likelihood of successfully viewing these species in the wild and his ability to enjoy and educate others about them. *Id.* at ¶¶ 115, 120-22.

Like Organizational Applicants' members, Mr. Klyver has alleged "concrete interests in appreciating and studying the aesthetic features and [scientific]

significance of a preserved and intact [Monument]," *Jewell*, 764 F.3d at 6, and those interests would be harmed by the relief Plaintiffs seek if they are successful in this litigation. *Cf. Japan Whaling Ass'n*, 478 U.S. at 230 n.4; *Ctr. for Biological Diversity v. Blank*, 933 F. Supp. 2d 125, 137 (D.D.C. 2013). Like Organizational Applicants, Mr. Klyver has alleged a harm that is traceable to the relief Plaintiffs seek and would be redressed by a favorable decision by this Court. For these reasons, Mr. Klyver has standing.

## II. Applicants are entitled to intervene as of right

Federal Rule of Civil Procedure 24 establishes the requirements for intervention. To intervene as of right, Rule 24(a)(2) requires prospective intervenors to (1) make a timely motion, (2) identify an interest in the subject of the action, (3) be situated such that "disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest," and (4) be inadequately represented by existing parties. *Fund for Animals*, 322 F.3d at 731 (internal quotation marks omitted). This Court takes "a liberal approach to intervention." *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000). All four Applicants satisfy each of these elements.

### A. Applicants' motion to intervene is timely

In determining whether an intervention motion is timely, courts consider "all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Smoke v. Norton*, 252 F.3d 468, 471

(D.C. Cir. 2001) (quoting *Am. Tel. & Tel. Co.*, 642 F.2d at 1295). Applicants' motion to intervene is timely because the present case is still in its very early stages, and Applicants' participation will not prejudice the existing parties.

Applicants are filing this motion less than a month after Plaintiffs filed their complaint. *Cf. Cty. of San Miguel v. MacDonald*, 244 F.R.D. 36, 38, 46 (D.D.C. 2007) (granting motion to intervene filed more than 90 days after the complaint). None of the existing parties have filed responsive pleadings, substantive motions, or briefs yet. Granting Applicants' motion to intervene at this early stage of the proceedings will not prejudice any party. If the Court grants intervention, Applicants intend to support the efficient adjudication of the case.

### B. Applicants and their members have legally protected interests at stake

Rule 24(a) next requires applicants for intervention to possess an interest relating to the property or transaction that is the subject matter of the litigation. Fed. R. Civ. P. 24(a)(2). A finding that a party has "constitutional standing"—as Applicants do, as explained above—"is alone sufficient to establish that [the party] has 'an interest relating to the property or transaction which is the subject of the action.'" *Fund for Animals*, 322 F.3d at 735 (quoting Fed. R. Civ. P. 24(a)(2)); *see also Crossroads*, 788 F.3d at 320 (an applicant that can demonstrate standing "*a fortiori* has an interest relating to the property or transaction which is the subject of the action." (internal quotation marks omitted)). The same factual allegations that support Applicants' standing establish a sufficient interest for intervention. As described above, Applicants have legally cognizable interests in preserving the

Monument's protections and protecting its marine ecosystems and wildlife from the harms of commercial fishing and other extractive activities, and this litigation directly affects those interests. *See supra* at 13-19.

### C. If successful, Plaintiffs' action would impair Applicants' interests

An applicant for intervention as of right must be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). Applying this requirement, the Court should "'look[] to the 'practical consequences' of denying intervention." *Fund for Animals*, 322 F.3d at 735 (internal quotation marks omitted). A "possibility" of impairment of Applicants' interests as a practical matter is sufficient. *Foster v. Gueory*, 655 F.2d 1319, 1325 (D.C. Cir. 1981).

Applicants satisfy this criterion. If the Court awards Plaintiffs the remedies they seek in this case, the Monument protections for which Applicants have worked extensively and that directly benefit Applicants' members would be lost. This result would harm the scientific, educational, aesthetic, and recreational interests of Applicants' members, and it would undermine the accomplishment of Organizational Applicants' longstanding missions of protecting fragile ocean ecosystems. *Cf. Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1253-54 (10th Cir. 2001) (conservation groups permitted to intervene as of right to defend President Clinton's designation of Grand Staircase Escalante National Monument because the Monument "provides greater protection for the intervenors' interests than prior" land management plans). Because Applicants are so situated that the disposition of

this action may, as a practical matter, impair their ability to protect their own and their members' interests in safeguarding the fragile ecosystems in the Monument, Applicants satisfy Rule 24(a)'s impairment-of-interest requirement.

### D. Applicants' interests may not be adequately represented by Federal Defendants

Finally, an applicant for intervention as a matter of right must show that its interests may not be adequately represented by the existing parties to the litigation. This requirement is "not onerous." *Fund for Animals*, 322 F.3d at 735 (internal quotation marks omitted). It merely requires that "the applicant show that representation of his interest '*may* be' inadequate; and the burden of making that showing should be treated as minimal." *Id.* (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (emphasis added)). An applicant "'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee[.]'" *Id.* (quoting *Am. Tel. & Tel. Co.*, 642 F.2d at 1293).

None of the current parties adequately represents Applicants' particular and specific interests in this matter. As defendant-intervenors, Applicants would be nominally aligned with the Federal Defendants, but the D.C. Circuit "ha[s] often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Id.* at 736; *see also Crossroads*, 788 F.3d at 317-18, 321 (explaining that the existence of different governmental and private interests supports intervention); *Dimond v. Dist. of Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986) (same). Here, the Federal Defendants represent more general interests, which

differ in important respects from the specific conservation interest of Applicants and their members. *See Dimond*, 792 F.2d at 192-93; *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 70 (D.D.C. 2006); *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6, 8 (D.D.C. 1993). This Court regularly grants motions to intervene by nonprofit conservation organizations in similar suits against the federal government brought to remove or alter environmental protections. *See, e.g.*, *Fed. Forest Res. Coal. v. Vilsack*, 100 F. Supp. 3d 21, 33 (D.D.C. 2015); *Guindon v. Pritzker*, 31 F. Supp. 3d 169, 185 (D.D.C. 2014).

Further, the interests of a governmental party and a seemingly aligned prospective intervenor "might diverge during the course of litigation." *Fund for Animals*, 322 F.3d at 736. Therefore, even where "there may be a partial congruence of interests, that does not guarantee the adequacy of representation." *Id.* at 736-37 (granting intervention). This can be particularly true during times of transition between presidential administrations, when the chances of policy shifts are higher. *See, e.g.*, *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1107 (9th Cir. 2002) (in granting intervention of right to conservation groups, noting Bush Administration stopped defending challenge to Roadless Rule promulgated by Clinton Administration), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998) (finding inadequacy of representation in part because "it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts"). President Obama designated this Monument in

2016, and it is unclear whether the Trump Administration will support it or other prior presidents' monument designations. In his Senate confirmation hearing, Interior Secretary Zinke, a defendant in this lawsuit, suggested the new Administration might reconsider some of former President Obama's monument designations, opining that "[i]t will be interesting to see whether the President has the authority to nullify a monument."[2] At the least, even if their substantive positions do not diverge, Applicants will "likely . . . serve as a vigorous and helpful supplement to [the federal government]'s defense." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977). Given the minimal showing necessary to find inadequate representation, Applicants clearly satisfy this final criterion.

For the foregoing reasons, the Court should grant Applicants' motion to intervene as of right.

## III. Alternatively, the Court should permit Applicants to intervene permissively

If the Court denies intervention as of right, Applicants request leave to intervene under Rule 24(b). Permissive intervention is appropriate when an applicant's timely defense "shares a question of law or fact in common with the underlying action and if the intervention will not unduly delay or prejudice the rights of the original parties." *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004) (citing Fed. R. Civ. P. 24(b)), *abrogated on other grounds by Republic of Iraq v. Beatry*, 556 U.S. 848 (2009); *see also Equal Emp't Opportunity Comm'n v. Nat'l*

---

[2] Senate Confirmation Hearing for Ryan Zinke at 1:11:37 to 1:13:35 (Jan. 17, 2017), at https://www.c-span.org/video/?421718-1/ryan-zinke-says-will-address-sexual-assault-allegations-interior&start=4285.

*Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (requiring applicants for permissive intervention to present "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action."). Applicants satisfy the criteria for permissive intervention.

First, Applicants do not seek to raise new claims or expand the scope of the Court's subject matter jurisdiction, so they need not establish an independent jurisdictional basis for their intervention.

Second, as demonstrated above, Applicants' motion is timely: the case is at a preliminary stage, and no substantive motions or briefs have been filed. Applicants do not assert any new claims. They intend to oppose Plaintiffs' claims and requests for relief and to offer defensive arguments, all of which necessarily share questions of law and fact in common with the central issues in this case. Applicants' involvement will cause no undue delay or prejudice to the parties. If the Court grants intervention, Applicants intend to support the efficient adjudication of the case.

Third, as demonstrated in the proposed answer, Applicants' sole affirmative defense is that Plaintiffs' complaint fails to state a claim upon which relief can be granted, which turns entirely on questions of law and fact that are already at issue in the litigation. *See* Proposed Answer at 12 (Affirmative Defense). Applicants' involvement in the case would inject no new issues of law or fact that have not already been raised by Plaintiffs' complaint.

Applicants therefore meet the criteria for permissive intervention. Further, Applicants submit that their intervention would provide the Court with a critical and as yet unrepresented perspective on the issues and legal questions at the heart of this case. Applicants have deep subject-matter expertise in ocean protection generally and in the Northeast Canyons and Seamounts in particular, and NRDC, CLF, and Mr. Klyver were involved in the lengthy stakeholder process that culminated in President Obama's designation of the Monument. *See id.* at ¶¶ 93-94, 98-99, 107-08, 112-15. Organizational Applicants also have legal expertise and a strong institutional interest in the proper interpretation of the President's authority under the Antiquities Act. In fact, NRDC intervened as defendant in a similar challenge to a presidential monument designation. *Mountain States Legal Found. v. Bush*, No. 00-2072 (D.D.C. Nov. 16, 2001) (unpub.) (dismissing plaintiffs' complaint for failure to state a claim), *aff'd*, 306 F.3d 1132 (D.C. Cir. 2002).

Given the importance of the issues involved in this case, Applicants' stake in preserving the Monument's protections, and the early stage of the litigation, the Court should at a minimum allow permissive intervention.

/

/

/

/

/

/

## CONCLUSION

For the reasons set forth above, Applicants Natural Resources Defense Council, Conservation Law Foundation, Center for Biological Diversity, and R. Zack Klyver request that the Court grant their motion to intervene as of right or, in the alternative, to intervene permissively. Pursuant to Local Civil Rule 7(j), Applicants have lodged a proposed answer with this motion to intervene.

Dated: March 29, 2017

Respectfully submitted,

*/s/ Aaron Colangelo*

Aaron Colangelo (D.C. Bar No. 468448)
Natural Resources Defense Council
1152 15th St. NW, Suite 300
Washington, D.C. 20005
Phone: (202) 289-2376
Fax: (415) 795-4799
E-mail: acolangelo@nrdc.org
*Counsel for NRDC*

Bradford H. Sewell (*pro hac vice* forthcoming)
Natural Resources Defense Council
40 West 20th Street, 11th Floor
New York, New York 10011
Tel.: (212) 727-4507
Fax: (212) 795-4799
E-mail: bsewell@nrdc.org
*Counsel for NRDC*

Michael E. Wall (*pro hac vice* forthcoming)
Katherine Desormeau (*pro hac vice* forthcoming)
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, California 94104
Tel.: (415) 875-6158
Fax: (212) 795-4799
E-mail: mwall@nrdc.org
E-mail: kdesormeau@nrdc.org

*Counsel for NRDC*

*/s/ Peter Shelley*
Peter Shelley (*pro hac vice* forthcoming)
Conservation Law Foundation
62 Summer Street
Boston, Massachusetts 02110
Tel.: (617) 850-1754
E-mail: pshelley@clf.org
*Counsel for CLF*

*/s/ Roger Fleming*
Roger Fleming (DCBA # ME001)
Earthjustice
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
Tel.: (202) 667-4500
Fax: (202) 667-2356
E-mail: rfleming@earthjustice.org
*Counsel for CBD and Zack Klyver*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of March, 2017, I electronically filed the foregoing Memorandum in Support of Defendant-Intervenor Applicants' Motion to Intervene with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to counsel of record in this proceeding.

Dated: March 29, 2017

*<u>/s/ Aaron Colangelo</u>*
Aaron Colangelo (D.C. Bar No. 468448)
Natural Resources Defense Council
1152 15th St. NW, Suite 300
Washington, D.C. 20005
Phone: (202) 289-2376
Fax: (415) 795-4799
E-mail: acolangelo@nrdc.org
*Counsel for NRDC*