**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, 8 Otis Place, Scituate, Massachusetts 02066,<br><br>ATLANTIC OFFSHORE LOBSTERMEN'S ASSOCIATION, 221 Third Street, Newport, Rhode Island 02840,<br><br>LONG ISLAND COMMERCIAL FISHING ASSOCIATION, P.O. Box 191, Montauk, New York 11954,<br><br>GARDEN STATE SEAFOOD ASSOCIATION, 212 West State Street, Trenton, New Jersey 08608, and<br><br>RHODE ISLAND FISHERMEN'S ALLIANCE, P.O. Box 337, East Greenwich, Rhode Island 02818,<br><br>*Plaintiffs*,<br>v.<br><br>WILBUR ROSS, in his official capacity as Secretary of Department of Commerce, 1401 Constitution Avenue, N.W., Washington, D.C. 20230,<br><br>BENJAMIN FRIEDMAN, in his official capacity as Deputy Undersecretary for Operations for the National Oceanic and Atmospheric Administration, 1401 Constitution Avenue N.W., Room 5128, Washington, D.C. 20230,<br><br>RYAN ZINKE, in his official capacity as Secretary of the Department of the Interior, 1849 C Street, N.W., Washington, D.C. 20240,<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, 1600 Pennsylvania Avenue N.W., Washington, D.C. 20006, and<br><br>JANE DOE, in her official capacity as Chairman | Case No. 17-cv-00406 (JEB)<br><br>**[Proposed] Answer in Intervention of Defendant-Intervenors Natural Resources Defense Council, Conservation Law Foundation, Center for Biological Diversity, and R. Zack Klyver** |

for the Council on Environmental Quality, 722 Jackson Place, N.W., Washington, D.C. 20506,

*Defendants*,

and

NATURAL RESOURCES DEFENSE COUNCIL, INC., 40 West 20th Street, 11th Floor, New York, New York 10011,

CONSERVATION LAW FOUNDATION, 62 Summer Street, Boston, Massachusetts 02110,

CENTER FOR BIOLOGICAL DIVERSITY, 378 N. Main Avenue, Tucson, Arizona 85701, and

R. ZACK KLYVER, 25 Federal Street, Bar Harbor, Maine 04609,

*Defendant-Intervenor Applicants.*

## [PROPOSED] ANSWER IN INTERVENTION

Defendant-Intervenors Natural Resources Defense Council, Conservation Law Foundation, Center for Biological Diversity, and R. Zack Klyver (collectively, Intervenors), through counsel, answer the complaint in this case dated March 7, 2017, as follows. The numbered paragraphs below correspond to the numbered paragraphs in the complaint. Intervenors deny each and every allegation in the complaint that is not specifically admitted, answered, or otherwise responded to in this Answer.

1. Admit that the Antiquities Act of 1906 authorizes the President to designate national monuments, and that the Act as originally enacted contained the quoted phrases. Deny any remaining allegations as Plaintiffs' characterization of the Antiquities Act and aver that the Act's contents are contained in the Act itself.

2. Admit that on September 15, 2016, President Obama designated an approximately 5,000 square mile area in the Atlantic Ocean 130 miles southeast of Cape Cod as the "Northeast Canyons and Seamounts Marine National Monument." Admit that the Proclamation prohibits commercial fishing within the Monument's boundaries, except for lobster and red crab fishing, which may be permitted for another seven years. Deny that this area has been "an important commercial fishery for decades." Deny the remaining allegations as Plaintiffs' characterization of the President's Proclamation and aver that the contents of the Proclamation are identified in the Proclamation itself.

3. Deny.

4. The allegations describe Plaintiffs' requested relief in this case, to which no response is required. To the extent the allegations suggest that Plaintiffs are entitled to such relief, deny.

5. The allegations state legal conclusions to which no response is required. To the extent a response is required, Intervenors lack knowledge or information sufficient to form a belief, and therefore deny.

6. The allegations state legal conclusions to which no response is required. To the extent a response is required, admit.

7. Lack knowledge or information sufficient to form a belief, and therefore deny.

8. Lack knowledge or information sufficient to form a belief, and therefore deny.

9. Lack knowledge or information sufficient to form a belief, and therefore deny.

10. Lack knowledge or information sufficient to form a belief, and therefore deny.

11. Lack knowledge or information sufficient to form a belief, and therefore deny.

12. Lack knowledge or information sufficient to form a belief, and therefore deny.

13. Lack knowledge or information sufficient to form a belief, and therefore deny.

14. Admit.

15. Aver on information and belief that the Commerce Secretary's full name is Wilbur L. Ross, Jr. Deny the remaining allegations as Plaintiffs' characterization of the President's Proclamation and aver that the contents of the Proclamation are identified in the Proclamation itself.

16. Aver on information and belief that Benjamin Friedman is the Deputy Undersecretary for Operations for the National Oceanic and Atmospheric Administration (NOAA), and that he is performing the duties of NOAA

Administrator. Admit that Plaintiffs name Mr. Friedman as a defendant in his official capacity, and that the Proclamation charges NOAA with Monument management responsibilities. For all remaining allegations, Intervenors lack knowledge or information sufficient to form a belief, and therefore deny.

17. Deny, except admit that Ryan Zinke is the Secretary of the Interior, that Plaintiffs name Mr. Zinke as a defendant in his official capacity, and that the Secretaries of Commerce and of the Interior are required to issue a joint management plan for the Monument.

18. Lack knowledge or information sufficient to form a belief, and therefore deny. Admit that the position of Chairman for the Council on Environmental Quality is vacant.

19. Admit that Congress enacted the Antiquities Act in 1906. Deny all remaining allegations.

20. Admit that the quoted phrases appear in the Antiquities Act. Deny the remaining allegations as Plaintiffs' characterization of the Antiquities Act and aver that the Act's contents are contained in the Act itself.

21. Deny the allegations as Plaintiffs' characterization of the cited court decision and aver that its contents are contained in the decision itself.

22. Deny the allegations as Plaintiffs' characterizations of the Antiquities Act and the cited court decision, and aver that their contents are contained in the Act and the decision themselves.

23. Deny the allegations regarding the Antiquities Act and the cited court decision as Plaintiffs' characterizations of these documents, and aver that their contents are contained in the Act and the decision themselves. Deny all remaining allegations on the basis that the allegations are too vague to permit an answer or state legal conclusions to which no response is required. To the extent a response is required, deny.

24. Deny the allegations as Plaintiffs' characterization of the Antiquities Act and aver that the Act's contents are contained in the Act itself. Deny all remaining allegations.

25. The allegations state legal conclusions to which no response is required. To the extent a response is required, deny.

26. Deny all remaining allegations on the basis that the allegations are too vague to permit an answer or they state legal conclusions to which no response is required. To the extent a response is required, deny.

27. The allegations state legal conclusions to which no response is required. To the extent a response is required, deny.

28. Admit that Congress has exercised its authority to regulate in the U.S. Exclusive Economic Zone to protect the environment. Deny the remaining allegations on the basis that they are too vague to permit an answer.

29. Admit that in 1972 Congress enacted the National Marine Sanctuaries Act. Deny the remaining allegations as Plaintiffs' characterization of the Act and aver that its contents are contained in the Act itself.

30. Admit that in 1976 Congress enacted the Magnuson-Stevens Fishery Conservation and Management Act. Deny the remaining allegations as Plaintiffs' characterization of the Act and aver that its contents are contained in the Act itself.

31. Deny that regional fishery management councils prepare an annual stock assessment for each species commercially harvested in a fishery. Deny that regional fishery management councils set an annual catch limit for every species that is overfished. Deny the remaining allegation on the basis that it is too vague to permit an answer.

32. Deny. Aver that regional fishery management councils have the authority to recommend management measures that regulate fishing gear. Deny the remainder of the allegation on the basis that it is too vague to permit an answer.

33. Deny the allegations as Plaintiffs' characterization of the referenced statutes and aver that their contents are contained in the statutes themselves.

34. Admit.

35. Admit.

36. Lack knowledge or information sufficient to form a belief regarding the allegations, and therefore deny.

37. Deny the allegations on the basis that the allegations are too vague to permit an answer.

38. Deny.

39. Deny, except admit that the area within the Monument is a rich ecosystem that supports whales, sharks, sea turtles and other species.

40. Admit the allegations in the first sentence. Deny the remaining allegations on the basis that they are too vague to permit an answer.

41. Admit.

42. Lack knowledge or information sufficient to form a belief regarding the allegations, and therefore deny.

43. Admit that the New England Fishery Management Council has jurisdiction to manage fisheries on Georges Bank. Lack knowledge or information sufficient to form a belief regarding the allegation in the second sentence, and therefore deny. Deny that the Council enforces catch limits, and deny the remaining allegations in sentence three on the basis that the allegations are too vague to permit an answer.

44. Deny the allegations in the first sentence. Lack knowledge or information sufficient to form a belief regarding the allegation in the second and third sentences, and therefore deny. Deny the remaining allegations on the basis that they are too vague to permit an answer.

45. Deny the allegations on the basis that they are too vague to permit an answer.

46. Deny the allegations on the basis that the allegations are too vague to permit an answer.

47. Lack knowledge or information sufficient to form a belief regarding the allegations, and therefore deny. Deny the allegations as Plaintiffs' characterization of the referenced letter and aver that its contents are contained in the letter itself.

48. Deny the allegations as Plaintiffs' characterization of Governor Baker's letter and aver that its contents are contained in the letter itself.

49. Lack knowledge or information sufficient to form a belief regarding the allegations, and therefore deny. Deny the allegations as Plaintiffs' characterization of the referenced letter and aver that its contents are contained in the letter itself.

50. Deny the allegations as Plaintiffs' characterization of the referenced letter and aver that the Proclamation's contents are contained in the letter itself.

51. Deny the allegations as Plaintiffs' characterization of the referenced letter and aver that the Proclamation's contents are contained in the letter itself.

52. Admit.

53. Admit.

54. Admit.

55. Admit.

56. Deny the allegations in the first sentence as Plaintiffs' characterization of the Proclamation, and aver that the Proclamation's contents are contained in the Proclamation itself. Admit that the Monument area includes sharks, whales, turtles, and highly migratory fish.

57. Deny the allegations as Plaintiffs' characterization of the Proclamation and aver that the Proclamation's contents are contained in the Proclamation itself.

58. Deny the allegations as Plaintiffs' characterization of the Proclamation and aver that the Proclamation's contents are contained in the Proclamation itself.

59. Admit that the Proclamation directs the Secretaries of Commerce and of the Interior to manage the Monument and prepare a joint management plan within three years of the date of the Proclamation. Deny the remaining allegations as Plaintiffs' characterization of the Proclamation and aver that the Proclamation's contents are contained in the Proclamation itself.

60. Deny the allegations as Plaintiffs' characterization of the Proclamation and aver that the Proclamation's contents are contained in the Proclamation itself.

61. Deny the allegations as Plaintiffs' characterization of the Proclamation and aver that the Proclamation's contents are contained in the Proclamation itself.

62. Deny the allegations as Plaintiffs' characterization of the Proclamation and aver that the Proclamation's contents are contained in the Proclamation itself.

63. Admit the allegation in the first sentence that the Proclamation's prohibition on commercial fishing, except for lobster and red crab, went into effect on November 14, 2016. Lack knowledge or information sufficient to form a belief regarding the remaining allegations, and therefore deny.

64. Lack knowledge or information sufficient to form a belief regarding the allegations, and therefore deny.

65. The allegation states legal conclusions to which no response is required. To the extent a response is required, deny.

66. Lack knowledge or information sufficient to form a belief regarding the allegations, and therefore deny.

67. The allegation states legal conclusions to which no response is required. To the extent a response is required, deny.

68. The allegation states legal conclusions to which no response is required. To the extent a response is required, deny.

69. The allegation states legal conclusions to which no response is required. To the extent a response is required, deny.

70. Deny the allegations as Plaintiffs' characterization of the Antiquities Act and aver that the Act's contents are contained in the Act itself.

A. The heading states legal conclusions to which no response is required. To the extent a response is required, deny.

71. Deny the allegation contained in the first sentence as Plaintiffs' characterization of the Proclamation and aver that the Proclamation's contents are contained in the Proclamation itself. Deny the allegations contained in the second and third sentences.

B. The heading states legal conclusions to which no response is required. To the extent a response is required, deny.

72. Deny.

73. Deny.

74. Deny.

75. Deny the allegations contained in the first sentence. Deny the allegations contained in the remaining sentences as Plaintiffs' characterization of the Antiquities Act and the cited court decision, and aver that the Act's and the decision's contents are contained in the Act and the decision themselves.

## AFFIRMATIVE DEFENSE

### First Defense

The Complaint fails to state a claim upon which relief may be granted.

## AVERMENTS

Intervenors aver as follows:

**The Monument**

76. Approximately 130 miles off the coast of Cape Cod, Massachusetts, lies a cluster of four extinct undersea volcanoes (known as seamounts) and three undersea canyons, each one deeper than the Grand Canyon, that cut into the continental shelf. The dramatic terrain of these canyons and seamounts, the current patterns and biological richness of the water column ecosystems created by these features, and a wide diversity of marine habitats all combine to generate a unique three-dimensional biologic hotspot that offers food, shelter, and nursery habitat to an exceptional range of endemic and migratory sea life in an otherwise austere environment.

77. For scientists, the area is of unique, significant, and continuing interest, populated with rare lifeforms, novel ecological relationships, and unusual geological phenomena. Although the canyons and seamount area has a storied history of scientific exploration and has been the focus of intense scientific investigation and study over the last half decade, scientists are only beginning to discover the wealth of biodiversity found here.

78. So far, scientists have found many different species of cold-water corals and other invertebrates living on the New England Seamounts and in the Atlantic canyons, including species that have been found nowhere else on earth. *See* U.S. Dep't of the Interior, "Press Release: Secretaries Pritzker, Jewell Applaud President's Designation of Northeast Canyons and Seamounts Marine National Monument" (Sept. 15, 2016), at https://www.doi.gov/pressreleases/secretaries-pritzker-jewell-applaud-presidents-designation-northeast-canyons-and.

79. The area also hosts endangered sea turtles, sperm and beaked whales, and numerous species of seabirds, fish, and invertebrates.

80. These deep-sea ecosystems are highly vulnerable to the types of damage caused by commercial fishing, seismic surveying, oil and gas drilling, and mining. Deep-sea organisms tend to have longer lifespans and slower growth rates than their shallow-water counterparts, making it difficult for them to recover from human disturbances.

81. One pass of a large weighted trawl net (so-called bottom trawling) scraping along a canyon wall or the lowering and retrieving of heavy offshore crab

or lobster pots, for example, can destroy corals that have been growing for hundreds or thousands of years.

82. Higher in the water column, small whales, dolphins, seabirds, and sea turtles can get caught in so-called longlines, which can extend thirty miles with thousands of hooks intended to catch swordfish and tuna.

83. The Monument is an important feeding ground for a myriad of other species including seabirds such as puffins, gulls, shearwaters, storm petrels, gannets, skuas, and terns; pelagic species including whales, dolphins, and turtles; and migratory fish such as tuna and sharks. Some of these species (such as puffins and whales) spend portions of the year feeding in or traveling through the Monument area, and they rely on the Monument area as a source of shelter and food.

84. Powerful currents created by the canyons lift nutrients to the surface, fueling plankton growth. This explosion of plankton, the base of the food chain, attracts schools of small fish and the larger animals that prey on them. The entire ecosystem from the ocean floor to the ocean surface is of great scientific interest.

85. The ruggedness of the terrain and the depth of the canyons and seamounts have so far kept these ecosystems largely out of the reach of extractive industries. For example, on information and belief, only approximately a half-dozen boats currently fish for lobsters or crabs in the Monument. However, as technology advances and the world's hunger grows for seafood, fossil fuels, and rare minerals, geography alone will not be enough to protect this area.

86. The Intervenors—together with a large coalition of stakeholders including the Pew Charitable Trusts, the Mystic and New England Aquariums, state and local political officials, over a hundred scientists, and numerous businesses, faith leaders, and recreational fishermen—called on the Obama Administration to confer permanent protection on the canyons and seamounts area.

87. There was broad support for the Monument from scientists, members of the public, coastal businesses, recreational fishermen, faith-based leaders, federal and state representatives, the region's two leading aquariums, local conservation organizations, and others.

88. Senator Richard Blumenthal and the entre Connecticut congressional delegation supported monument designation and submitted a formal proposal that encompassed seven major canyons and four seamounts.

89. The Obama Administration considered these requests for permanent protection of the canyons and seamounts, as well as opposing views, in an extensive year-long public process that included a public meeting in September 2015, several rounds of regional stakeholder meetings, including with commercial fishing interests and Intervenors, and the opportunity to submit public comments through a web portal that was available for more than a year.

90. The Obama Administration ultimately received more than 300,000 comments and letters in support of the monument designation, including letters from Intervenors.

**The Intervenors**

91. The Natural Resources Defense Council ("NRDC") is a non-profit environmental membership organization with hundreds of thousands of members nationwide, including tens of thousands of members in states along the northeastern Atlantic seaboard.

92. NRDC's mission is to safeguard the earth—its people, its plants and animals, and the natural systems on which all life depends.

93. Through its Oceans Program, NRDC has demonstrated a longstanding commitment to the protection of vulnerable marine ecosystems. For more than three decades, NRDC has advocated for the protection and long-term sustainability of our ocean resources on behalf of its members. A central part of NRDC's mission is to protect the nation's seas from pollution and exploitation and to conserve ocean natural treasures.

94. NRDC has worked to prevent and combat damage from extractive activities (including harmful fishing practices) in the Monument area and elsewhere in the Atlantic Ocean, and it advocated for the creation of the Monument on behalf of its members.

95. Among NRDC's members are scientists, recreational fishermen, and bird- and wildlife-watchers who travel to, use, and enjoy the area in and around the Monument for scientific study, education, wildlife viewing, aesthetic appreciation, and recreational fishing. NRDC's members also use and enjoy resources outside the Monument's boundaries that benefit from its protections; for example, NRDC

members who participate in whale- and bird-watching trips enjoy viewing sperm whales, migratory fish, and Atlantic puffins that rely on the Monument area for food, shelter, and migration purposes.

96. The Monument designation benefits their interests by protecting this area from the disruption and damage caused by commercial extractive activities, preserving the health, beauty, and research values of the ecosystems found here, and enabling NRDC's members to study, view, and enjoy the Monument area and the wildlife it supports in their largely pristine state.

97. The Conservation Law Foundation is ("CLF") is a private, not-for-profit organization dedicated, *inter alia*, to protecting marine wildlife and their habitats as well as other coastal and ocean resources in New England.

98. To further these goals, CLF undertakes litigation and other legal advocacy on behalf of its members' interests; educates its members on conservation issues and on threats, challenges, and solutions to New England's oceans so that they can exercise their rights and protect their interests in those resources; promotes public awareness; education, and citizen involvement in the conservation of marine wildlife and resources; and supports programs for the conservation of marine wildlife and their habitats.

99. On behalf of its members, CLF has worked intensively in the Atlantic Ocean in the vicinity of the Monument to prevent and combat damage from extractive activities (including harmful fishing practices), and it advocated for the creation of the Monument.

100. CLF has thousands of members in New England coastal states. CLF's members use and enjoy fish and other marine resources off the New England coasts for recreational, educational, and scientific purposes.

101. CLF's members have a particular interest in landscape-scale marine protection of scientifically important places in the ocean off New England, such as the Monument, because such areas increase the ocean's resilience to the stresses and changes associated with excessive human carbon emissions and serve as scientific reference sites.

102. CLF has members who are professional scientists who have been engaged for years in longitudinal marine resource science in the areas within and many of the animals associated with the Monument and nearby.

103. At least one of CLF's members has a professional interest in using the Monument area as a reference and control site to study the regional changes to marine wildlife associated with climate change in areas not subjected to commercial fishing and other extractive activities.

104. CLF also has members who plan paid offshore pelagic bird-watching trips to areas inside the Monument boundaries and its vicinity to observe offshore seabirds. These members' interest in these trips has been heightened by the creation of the Monument and they want to continue planning and participating in observation trips in the Monument. These members are interested in having an area where seabirds can forage and overwinter with minimum human disturbances.

105. The Monument designation benefits CLF's members' interests by protecting this area from the disruption and damage caused by commercial fishing and other commercial extractive activities, by preserving the health and beauty of the ecosystems found here for future study and scientific research, and by enabling CLF's members to study, view, and enjoy the Monument as the only large marine protected area off New England's shores.

106. The Center for Biological Diversity ("the Center") is a non-profit environmental organization whose primary mission is to ensure the long-term health and viability of animal and plant communities around the world and to protect both the natural world and humans from environmental harms.

107. The Center has devoted considerable resources to ensuring the conservation and sound management of numerous marine species threatened by destructive activities in our oceans, including unsustainable fishing practices and offshore oil and gas exploration, development, and production.

108. Center members and staff regularly use the northwest Atlantic Ocean, including areas within and near the Monument, to view and study marine wildlife, including humpback, sperm, fin, and sei whales; loggerhead and leatherback turtles; sharks and other fish; and seabirds.

109. Commercial fishing, seismic exploration, oil and gas development, and mineral extraction harm many of the marine wildlife species that Center members enjoy viewing and studying, decreasing their likelihood of viewing these species in the wild.

110. Center members and staff regularly participate in agency decision-making that affects marine life in the Atlantic Ocean. The Monument designation provides Center members and staff with the opportunity to participate in agency decision-making affecting marine life in the northwest Atlantic Ocean and with scientific information to use in their advocacy efforts, including comments on agency decision-making affecting marine life in the northwest Atlantic Ocean.

111. R. Zack Klyver is the Head Naturalist for Bar Harbor Whale Watch Co., located in Bar Harbor, Maine.

112. Mr. Klyver has guided over 3,000 trips and taken over a half million passengers to see the whales, seabirds, and other marine wildlife of the northwest Atlantic Ocean.

113. Mr. Klyver has not visited the waters within the Monument boundaries before, but he has frequently traveled to observe marine wildlife in many different parts of the northwest Atlantic and is considering making a trip to the Monument now that it has been established.

114. Mr. Klyver regularly uses the waters of the northwest Atlantic Ocean to view, study, and educate others about marine wildlife, including wildlife that depends upon the Monument as habitat and feeding ground, such as humpback, sperm, fin, and sei whales, and many seabirds, including the population of Atlantic puffins that nest in the summer on six islands near Bar Harbor and overwinter in the Monument area.

115. The Monument's protections benefit Mr. Klyver's interests in viewing, studying, and educating others about these whales and seabirds by providing them with a stable, protected source of food, shelter, and passage for their migrations and movements, reducing the negative effects of commercial fishing and other extractive activities, and helping to ensure that they maintain healthy populations year after year. Mr. Klyver advocated for the Monument's creation on those grounds.

116. The Monument designation will also facilitate scientific investigation and therefore provide Mr. Klyver with information to use when educating the public, commenting on agency decisions and advising agency decision-makers about marine life in the northwest Atlantic Ocean, as he does frequently in his capacity as a naturalist and as a member of the Atlantic herring advisory panel for the New England Fishery Management Council.

**The importance of the Monument's protections to Intervenors and their members**

117. The Monument protects the submarine canyons and seamounts and the natural resources and ecosystems in and around them from a range of destructive and harmful activities, including commercial fishing and oil, gas, or minerals exploration and development.

118. Intervenors and their members benefit from the Monument and would be harmed by the relief Plaintiffs seek in their complaint.

119. Intervenors and their members include individuals who want to view, study, and enjoy the aesthetic and recreational benefits of the unique habitat,

corals, and other marine species protected by the Monument. The prohibition on commercial fishing and other extractive activities within the Monument protects and advances the interests of Intervenors and their members. It enables them to use and enjoy the Monument area or resources that benefit from the Monument's protections for their scientific, educational, aesthetic, and recreational purposes without commercial fishing and other prohibited activities impacting the natural environment or harming the marine life that they wish to study, observe, and enjoy.

120. Re-opening the Monument area to commercial fishing would result in bycatch of marine wildlife, increase vessel traffic and noise, damage fragile corals, disturb feeding and foraging seabirds and marine mammals, entangle marine mammals and other sea life in fishing gear, impair the Monument's purposes as a scientific reference site, and modify the area's ecology, such as by depleting forage fish stocks and extracting large numbers of certain fish and other species in certain locations within the Monument area.

121. The Monument's protections are crucial to ensuring the health of endangered and threatened species like whales and puffins. Re-opening the Monument area to commercial fishing would harm these species by disrupting the area on which they depend for overwintering, feeding, and migration. Re-opening the area to commercial fishing could result in the deaths of individual animals and would impact the populations as a whole, reducing their availability to be viewed, studied, and enjoyed. Re-opening the Monument to commercial fishing would decrease the likelihood of successfully viewing these species in the wild.

122. As the effects of climate change and habitat destruction stress marine wildlife, the Monument plays an especially important role in ensuring the ocean's resilience and maintaining healthy fish, marine mammal, and seabird populations in nearby areas of the northwestern Atlantic Ocean.

123. The Monument's protections are also important to enabling scientific study of these ocean areas with a minimum of human disturbances. Re-opening the area to commercial fishing would interfere with scientific investigations of the canyons and seamounts.

124. Re-opening the area to commercial fishing would also make it impossible to use the Monument as a control area for comparative studies of the effects of human disturbances on fragile ecosystems. Scientists, including CLF's members, plan to use the Monument area to better understand the impacts of commercial fishing on similar areas and their coral colonies, and to analyze the ecological and other benefits associated with landscape-scale closed marine areas, of which the Monument is the only one in the Atlantic.

WHEREFORE, Intervenors respectfully request that the Court:

(A) Dismiss the complaint with prejudice;

(B) Enter judgment in favor of Defendants and Intervenors;

(C) Decline to grant any relief to Plaintiffs; and

(D) Grant such further relief as the Court deems just and proper.

Dated: March 29, 2017

Respectfully submitted,

*/s/ Aaron Colangelo*
Aaron Colangelo (D.C. Bar No. 468448)

Natural Resources Defense Council
1152 15th St. NW, Suite 300
Washington, D.C. 20005
Phone: (202) 289-2376
Fax: (415) 795-4799
E-mail: acolangelo@nrdc.org
*Counsel for NRDC*

Bradford H. Sewell (*pro hac vice* pending)
Natural Resources Defense Council
40 West 20th Street, 11th Floor
New York, New York 10011
Tel.: (212) 727-4507
Fax: (212) 795-4799
E-mail: bsewell@nrdc.org
*Counsel for NRDC*

Michael E. Wall (*pro hac vice* pending)
Katherine Desormeau (*pro hac vice* pending)
Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, California 94104
Tel.: (415) 875-6158
Fax: (212) 795-4799
E-mail: mwall@nrdc.org
E-mail: kdesormeau@nrdc.org
*Counsel for NRDC*

*/s/ Peter Shelley*
Peter Shelley (*pro hac vice* forthcoming)
Conservation Law Foundation
62 Summer Street
Boston, Massachusetts 02110
Tel.: (617) 850-1754
E-mail: pshelley@clf.org
*Counsel for CLF*

*/s/ Roger Fleming*
Roger Fleming (DCBA # ME001)
Earthjustice
1625 Massachusetts Avenue, N.W.
Washington, D.C. 20036
Tel.: (202) 667-4500

Fax: (202) 667-2356
E-mail: rfleming@earthjustice.org
*Counsel for CBD and Zack Klyver*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of March, 2017, I electronically filed the foregoing Proposed Answer in Intervention with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to counsel of record in this proceeding.

Dated: March 29, 2017

*/s/ Aaron Colangelo*

Aaron Colangelo (D.C. Bar No. 468448)
Natural Resources Defense Council
1152 15th St. NW, Suite 300
Washington, D.C. 20005
Phone: (202) 289-2376
Fax: (415) 795-4799
E-mail: acolangelo@nrdc.org
*Counsel for NRDC*