UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.  1:17-cv-406-JEB |
| WILBUR J. ROSS, JR., *et al.*, | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
FEDERAL DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STATUTORY AND FACTUAL BACKGROUND ..................................................... 2

    I.      The Antiquities Act ................................................................................. 2

    II.    Northeast Canyons and Seamounts Marine National ............................. 3

    III.   Plaintiffs' Complaint .............................................................................. 5

STANDARD OF REVIEW ..................................................................................... 6

    I.    Motion to Dismiss ................................................................................... 6

    II.    Judicial Review of Presidential Decisionmaking .................................... 7

ARGUMENT ........................................................................................................ 8

    I.    The President's Designation Of This Monument Did Not Violate The
         Antiquities Act. ....................................................................................... 8

         A.    The Text and Prior Application of the Antiquities Act Establishes
               the President's Authority to Designate a Marine Monument. ................... 8

               1.    The Antiquities Act authorizes the creation of a marine
                     monument ..................................................................................... 9

               2.    The United States owns or controls the Monument area ............. 12

         B.    The President Acted Within the Scope of His Authority In
               Determining the Size and Configuration of the Monument ...................... 15

    II.    Plaintiffs' Claims Against The Agency Defendants Are Not Ripe. ...................... 18

    III.   Plaintiffs Fail To State A Claim Against Defendant CEQ Chairman. .................. 21

CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967)..................................................................................... 18, 19, 20

*Alaska v. United States*,
   545 U.S. 75 (2005)................................................................................................. 11

*Am. Petroleum Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012).............................................................................. 20

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)........................................................................................ 6, 7, 21

*Cameron v. United States*,
   252 U.S. 450 (1920)......................................................................................... 9, 17

*Cappaert v. United States*,
   426 U.S. 128 (1976).................................................................................... 7, 9, 17

Chlorine Inst., Inc. v. Fed. R.R. Admin.,
   718 F.3d 922 (D.C. Cir. 2013).............................................................................. 19

Dakota Cent. Tel. Co. v. South Dakota ex rel. Payne,
   250 U.S. 163 (1919)............................................................................................... 7

Dalton v. Specter,
   511 U.S. 462 (1994).......................................................................................... 1, 7

Dames & Moore v. Regan,
   453 U.S. 654 (1981)............................................................................................... 9

F.D.I.C. v. Meyer,
   510 U.S. 471 (1994).................................................................................. 10, 12, 14

Fludd v. Mitchell,
   181 F. Supp. 3d 132 (D.D.C. 2016) ...................................................................... 6

Gammill v. U.S. Dep't of Educ.,
   989 F. Supp. 2d 118 (D.D.C. 2013) ...................................................................... 6

Jackson v. District of Columbia,
   826 F. Supp. 2d 109 (D.D.C. 2011) .................................................................... 21

King v. St. Vincent's Hosp.,
   502 U.S. 215 (1991)............................................................................................. 17

Kowal v. MCI Commc'ns Corp.,
   16 F.3d 1271 (D.C. Cir. 1994).............................................................................. 7

Medellin v. Texas,
   552 U.S. 491 (2008)............................................................................................... 8

*Mountain States Legal Found. v. Bush,
  306 F.3d 1132 (D.C. Cir. 2002) ............................................................. 7, 9, 18

Perry Capital LLC v. Mnuchin,
  864 F.3d 591 (D.C. Cir. 2017) ...................................................................... 19

Stewart v. Nat'l Educ. Ass'n,
  471 F.3d 169 (D.C. Cir. 2006) ........................................................................ 7

*Tulare County v. Bush ("Tulare I"),
  185 F. Supp. 2d 18 (D.D.C. 2001) ....................................................... 17, 18, 20

*Tulare Cty. v. Bush ("Tulare II"),
  306 F.3d 1138 (D.C. Cir. 2002) ....................................................... 1, 7, 8, 16, 18

United States v. California,
  332 U.S. 19 (1947) ........................................................................................ 11

United States v. California,
  332 U.S. 804 (1947) ...................................................................................... 11

*United States v. California,
  436 U.S. 32 (1978) ....................................................................... 7, 9, 10, 11, 16

United States v. George S. Bush & Co.,
  310 U.S. 371 (1940) ........................................................................................ 7

*Utah Ass'n of Ctys. v. Bush ("UAC"),
  316 F. Supp. 2d 1172 (D. Utah 2004) ........................................................... 3, 18

Wyo. Outdoor Council v. U.S. Forest Serv.,
  165 F.3d 43 (D.C. Cir. 1999) ...................................................................... 19, 20

Youngstown Sheet & Tube Co. v. Sawyer,
  343 U.S. 579 (1952) ........................................................................................ 8

**Constitutions**

U.S. Const. art. III .............................................................................................. 19

**Statutes**

16 U.S.C. §§ 1431-1445(b) .................................................................................. 14

16 U.S.C. §§ 1801-1803 ...................................................................................... 14

43 U.S.C. §§ 1331-1356b ..................................................................................... 14

54 U.S.C. § 320301 .................................................................................. 1, 2, 3, 10

54 U.S.C. § 320301(a) .................................................................................... 1, 9

54 U.S.C. § 320301(b) .............................................................................. 8, 9, 15

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................ 2, 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 2, 6

**Regulations**

3 C.F.R. § 22 ............................................................................................................ 13

3 C.F.R. § 547 .......................................................................................................... 13

3 C.F.R. § 67 ............................................................................................................ 14

48 Fed. Reg. 10,605 (Mar. 10, 1983) ...................................................................... 14

71 Fed. Reg. 36,443 (June 15, 2006) ...................................................................... 11

72 Fed. Reg. 10,031 (Feb. 28, 2007) ...................................................................... 11

74 Fed. Reg. 1557 (Jan. 6, 2009) ............................................................................ 12

74 Fed. Reg. 1565 (Jan. 6, 2009) ............................................................................ 12

74 Fed. Reg. 1577 (Jan. 6, 2009) ............................................................................ 12

81 Fed. Reg. 65,161 (Sept. 15, 2016) .................................. 1, 3, 4, 5, 10, 12, 15, 16, 18

**Other Authorities**

Black's Law Dictionary (10th ed. 2014) ............................................................. 10, 13

Mem. Op. for the Solicitor Dep't of Interior, *Administration of Coral Reef Resources in the Northwest Hawaiian Islands*, 2000 WL 34475732 (Sept. 15, 2000) ........................................ 15

Restatement (Third) of the Foreign Relations Law of the United States § 511(a) (2018) ...... 13, 14

## INTRODUCTION

The Antiquities Act of 1906 authorizes the President to designate national monuments "that are situated on land owned or controlled by the Federal Government."  54 U.S.C. § 320301(a).  Pursuant to the Act, President Barack Obama signed a proclamation designating the Northeast Canyons and Seamounts Marine National Monument ("Monument") to protect the marine ecosystems and geological features of three underwater canyons and four underwater mountains known as seamounts.  *See* Proclamation No. 9496, 81 Fed. Reg. 65,161 (Sept. 15, 2016) (the "Proclamation" or "Proc. 9496").  Principally concerned about restrictions on commercial fishing in the monument area, Plaintiffs sued in March 2017 challenging the President's authority to create a marine monument and raising further objections to the Monument's designated boundaries.  Compl., ECF No. 1.  Plaintiffs' claims lack merit.

Plaintiffs' Complaint fails to state a claim on which relief can be granted.  This Court cannot review how the President exercised the discretion that Congress granted him to designate and define national monuments in the Antiquities Act.  *See Dalton v. Specter*, 511 U.S. 462 (1994); *Tulare Cty. v. Bush* ("*Tulare II*"), 306 F.3d 1138 (D.C. Cir. 2002).  To the extent any review occurs, it must be limited to the question of whether the President's designation of the Monument, on its face, is authorized by the Antiquities Act.  The Antiquities Act authorizes the President to declare "historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest that are situated on land owned or controlled by the Federal Government to be national monuments."  54 U.S.C. § 320301.  That is what Proclamation 9496 does.  *See* 81 Fed. Reg. at 65,161 ("The canyon and seamount area contains objects of historic and scientific interest that are situated upon lands owned or controlled by the Federal Government").  And that should end this Court's inquiry.  Put simply, because the President

1

lawfully exercised his authority under the Antiquities Act to create the Northeast Canyons and Seamounts Marine National Monument, Plaintiffs' case should be dismissed.

In addition, even if Plaintiffs' Complaint stated a plausible claim against the President with respect to the designation of the Monument under the Antiquities Act, Plaintiffs' claims against the other defendants identified in the Complaint should be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim under Rule 12(b)(6) .   First, Plaintiffs' claim against the Council on Environmental Quality ("CEQ") Chairman as a defendant, which is not supported by any allegations in the Complaint regarding this defendant, should be dismissed for failure to state a claim.  Second, Plaintiffs' claims against the Secretary of Commerce, Deputy Undersecretary of National Oceanic Atmospheric Association ("NOAA"), and Secretary of the Interior (the "Agency Defendants") are not ripe as these Defendants have yet to act to manage the Monument.

## STATUTORY AND FACTUAL BACKGROUND

### I.      The Antiquities Act

In 1906, Congress passed the Antiquities Act, delegating to the President power to declare landmarks, structures, and objects of historic and scientific interest to be national monuments, and to reserve federal lands for their protection.  *See* Pub. L. No. 59-209, 34 Stat. 225 (1906) (codified at 54 U.S.C. § 320301).  As recodified in 2014 at 54 U.S.C. § 320301, the Antiquities Act now reads in pertinent part:

> (a) Presidential declaration—The President may, in the President's discretion, declare by public proclamation historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest that are situated on land owned or controlled by the Federal Government to be national monuments.
> (b) Reservation of land—The President may reserve parcels of land as a part of the national monuments.  The limits of the parcels shall be confined to the smallest area compatible with the proper care and management of the objects to be protected.

2

The legislation stemmed from proposals, primarily from archaeological organizations, to protect objects of antiquity on federal lands.  *See Utah Ass'n of Ctys. v. Bush* ("*UAC*"), 316 F. Supp. 2d 1172, 1178 (D. Utah 2004).  At the turn of the twentieth century, public lands were generally open to the public and available for homesteading, mining, and other claims, unless Congress or the Executive Branch had "withdrawn" the land from the public domain and/or "reserved" the land for a particular purpose.  As a result, many historic sites on public lands had been looted and destroyed.  *See* H.R. Rep. No. 59-224, at 3 (1906).

The 1906 Antiquities Act authorized the President "*in his discretion*, to declare by public proclamation historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest that are situated upon the lands owned or controlled by the Government of the United States to be national monuments . . . ."  Pub. L. No. 59-209, § 2, 34 Stat. at 225 (emphasis added).  The statute also authorized the President to reserve only those lands necessary to protect the monument objects, stating that he "may reserve as a part thereof parcels of land, the limits of which in all cases shall be confined to the smallest area compatible with the proper care and management of the objects to be protected . . . ."  *Id.*

## II.      Northeast Canyons and Seamounts Marine National Monument

The Monument was established by President Obama in 2016.  Proc. 9496, 81 Fed. Reg. at 65,161.  The Proclamation designated approximately 4,913 square miles of waters and submerged lands as being within the Monument (as shown below).  *Id.* at 65,161, 65,166.



The purpose of the Monument was to protect and showcase two distinct geological features that support certain identified ecological communities. *Id*. at 65,161. The designation stated that this area "contains objects of historic and scientific interest [the canyons and seamounts and the natural resources and ecosystems in and around them] that are situated upon lands owned or controlled by the Federal Government." *Id*.

The Proclamation also placed responsibility for the management of the Monument with the Secretaries of Commerce and the Interior. *Id*. at 65,164. The Secretaries were given until

4

September 21, 2019 – three years from the date of the proclamation – to prepare a joint

management plan for the activities within the Monument under the Magnuson-Stevens Fishery

Conservation and Management Act, the Endangered Species Act, the Marine Mammal

Protection Act, the National Wildlife Refuge System Administration Act, the Refuge Recreation

Act, and any other applicable Department of Commerce or Department of the Interior legal

authorities.  *Id*.  To date, no management plan has been promulgated.

In addition to several reservations for scientific activities, emergencies, law enforcement

and activities of the U.S. Armed Forces, the Proclamation identifies six prohibited activities and

seven regulated activities aimed at protecting the Monument.  *Id*. at 65,164-65.   Of particular

concern to Plaintiffs, the 2016 Proclamation prohibits commercial fishing, except for the red crab

fishery and the American lobster fishery.  *Id*. at 65,165.  Under existing permits in effect as of

the date of the proclamation, the red crab fishery and the American lobster fishery are allowed to

continue for seven years.  *Id*.

### III.    Plaintiffs' Complaint

Plaintiffs filed suit challenging the Proclamation on March 7, 2017.  Plaintiffs are

organizations representing commercial fishermen in the Northeast and fishery-dependent

businesses.  Compl. ¶¶ 7-13.  Plaintiffs bring claims against the President, the Secretary of the

Interior, the Secretary of Commerce, the Deputy Undersecretary for Operations for NOAA, and

the Chairman for the CEQ.   *Id*. ¶¶ 14-18.  Federal Defendants are all sued in their official

capacities, and Plaintiffs allege that their offices, except for the CEQ Chairman, issued the

Proclamation or have responsibility for managing or exercising authority over the Monument.

*Id*.  As to the CEQ Chairman, Plaintiffs sued her because they believe she consulted with the

President and collected evidence in support of the Proclamation.  *Id*. ¶ 18.

5

In filing this action, Plaintiffs allege that the President exceeded his power under the

Antiquities Act in designating a monument on federally-controlled land up to 130 miles off the

nation's Atlantic coast.  *Id.* ¶ 71.  Plaintiffs also allege that the President exceeded his power

under the Antiquities Act because the Monument is purportedly not "the smallest area

compatible with proper care and management" of the historic and scientific objects of interest.

*Id.* ¶ 72.  Based on these claims, Plaintiffs seek a declaratory judgment that the President was not

authorized by the Antiquities Act to establish this Monument and an injunction barring its

implementation by the President and the Secretaries of Commerce and Interior.  *See* Compl.

at 16.

## STANDARD OF REVIEW

### I.      Motion to Dismiss

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1),

the plaintiff bears the burden of establishing that the court has jurisdiction.  *Gammill v. U.S.*

*Dep't of Educ.*, 989 F. Supp. 2d 118, 120 (D.D.C. 2013).  Although it must assume all of the

factual allegations in the complaint to be true, the court "must give the plaintiff's factual

allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a

Rule 12(b)(6) motion for failure to state a claim" because "subject matter jurisdiction focuses on

the court's power to hear the claim."  *Id.* at 120 (internal citation omitted).  In addition, a court

may consider materials outside the pleadings in order to resolve the question of its jurisdiction.

*Fludd v. Mitchell*, 181 F. Supp. 3d 132, 137 (D.D.C. 2016).

On a Rule 12(b)(6) motion for failure to state a claim, a court must assess whether the

complaint alleges sufficient facts that, if accepted as true, state an entitlement to relief that is

"plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the

Court must accept the facts pleaded as true, legal assertions devoid of factual support are not

entitled to this assumption.  *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A complaint that presents merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

## II.      Judicial Review of Presidential Decisionmaking

Where the President acts pursuant to a delegation of authority from Congress, judicial review of presidential decisionmaking, if available at all, is extremely limited in scope.  This longstanding rule originates in concerns about separation of powers and the potential involvement of the judiciary in "considerations which are beyond the reach of judicial power." *Dakota Cent. Tel. Co. v. South Dakota ex rel. Payne*, 250 U.S. 163, 184 (1919); *see also Dalton*, 511 U.S. at 476 ("How the President chooses to exercise the discretion Congress has granted him is not a matter for our review."); *United States v. George S. Bush & Co.*, 310 U.S. 371, 380 (1940) ("For the judiciary to probe the reasoning which underlies this Proclamation would amount to a clear invasion of the legislative and executive domains.").  Thus, judicial review of presidential action is "not available when the statute in question commits the decision to the discretion of the President."  *Dalton*, 511 U.S. at 474.

Judicial review of presidential action under the Antiquities Act follows these principles. It is available, at most, "to ensure that the Proclamations are consistent with constitutional principles and that the President has not exceeded his statutory authority."  *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136 (D.C. Cir. 2002) (citing, *inter alia*, *United States v. California*, 436 U.S. 32, 35-36 (1978); *Cappaert v. United States*, 426 U.S. 128, 141-42 (1976)). *See also Tulare II*, 306 F.3d at 1141 (rejecting claims that monument proclamation was *ultra*

*vires* based on alleged failure "to include a certain level of detail," designation of nonqualifying objects, and failure to comply with the "smallest area compatible" requirement).

## ARGUMENT

### I.     The President's Designation Of This Monument Did Not Violate The Antiquities Act.

The Court should dismiss Plaintiffs' Complaint alleging that the President lacked the authority to designate this Monument for failure to state a claim upon which relief can be granted.  As discussed above, the President's exercise of discretion under the Antiquities Act is not subject to judicial review.  To the extent that this Court undertakes any review of the President's establishment of the Monument, it must be limited to determining whether the President's creation of the Monument was *ultra vires*.  That determination can and should be limited to a review of the Proclamation on its face.

Plaintiffs assert that the President lacked the authority to issue the Proclamation for a marine monument and for a monument of the designated size and configuration.  *See* Compl. ¶¶ 71-75.  To the contrary the President possesses broad power under the Antiquities Act to reserve federally-controlled land for national monuments and to determine what constitutes the "smallest area compatible with the proper care and management of the objects to be protected." 54 U.S.C. § 320301(b).  The Proclamation expressly relies upon and exercises this authority, and further judicial review of the President's congressionally-delegated discretion in how to comply with the statutory provisions is foreclosed by Circuit precedent.  *See Tulare II*, 306 F.3d at 1141-42.  Thus, Plaintiffs' Complaint should be dismissed.

### A.     The Text and Prior Application of the Antiquities Act Establishes the President's Authority to Designate a Marine Monument.

Presidential authority to act "must stem either from an act of Congress or from the Constitution itself."  *Medellin v. Texas*, 552 U.S. 491, 524 (2008) (citing *Youngstown Sheet &*

8

*Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952); *Dames & Moore v. Regan*, 453 U.S. 654, 668

(1981)).  On multiple occasions, the Supreme Court has confirmed that the Antiquities Act

delegates "broad power" to the President to designate national monuments and reserve lands for

those monuments.  *See Mountain States*, 306 F.3d at 1135 (citing *California*, 436 U.S. 32;

*Cappaert*, 426 U.S. at 141-42; *Cameron v. United States*, 252 U.S. 450 (1920)).  The statute

grants the President substantial flexibility, expressly leaving the declaration of a monument to

the President's "discretion."  54 U.S.C. § 320301(a).  Similarly, the decision to reserve lands for

a monument is entirely discretionary.  *See id.* § 320301(b) ("The President *may* reserve parcels

of land . . . ." (emphasis added)).

Plaintiffs allege that the Antiquities Act has been violated by this Monument because it is

"in the ocean 130 miles from the nation's coast" and because, according to Plaintiffs, submerged

land does not qualify as "'lands owned or controlled' by the federal government."  Compl. ¶ 71.

Thus, there are two related issues raised here:  (1) whether the Monument comprises lands as

covered by the Antiquities Act; and (2) whether the federal government owns or controls such

land up to 130 miles off the coast.

### 1.      The Antiquities Act authorizes the creation of a marine monument

Given the limited facial review allowed in this case, the Court needs to look no further

than the Proclamation designating this Monument.  The language of the Proclamation shows that

the President acted within the scope of his authority under the Act.  The Proclamation states

> The canyon and seamount area includes the waters and submerged lands within
> the coordinates included in the accompanying map.  The canyon and seamount
> area contains objects of historic and scientific interest that are situated upon lands
> owned or controlled by the Federal Government.  These objects are the canyons
> and seamounts themselves, and the natural resources and ecosystems in and
> around them.

9

Proc. 9496, 81 Fed. Reg. at 65,161.  Thus, the Proclamation recognizes the standard in the

Antiquities Act that requires a designation of lands owned or controlled by the federal

government, and creates the Monument on submerged federal lands that comprise the canyon

and seamount area.  Furthermore, the Proclamation makes it clear that the local ecosystem and

its natural resources form the basis for the historic and scientific interest in the Monument area,

so it is not possible to separate one from the other.

In addition to the language in the Proclamation, the text of the Act and case law support

the President's authority to designate this Monument.  The Antiquities Act does not include a

definition restricting the meaning of the word "land."  54 U.S.C. § 320301.  When a statute does

not define a term, a court should construe it according to its ordinary or natural meaning.

*F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994) (citation omitted).  "Land" is defined in Black's

Law Dictionary as "an immovable and indestructible three-dimensional area consisting of a

portion of the earth's surface, the space above and below the surface, and everything growing on

or permanently affixed to it."  (10th ed. 2014).  Based on the ordinary meaning of the word, it is

reasonable to conclude that land includes the submerged land that underlies and forms the

canyons and seamounts – land that is unquestionably under the federal government's control.

This issue has been previously examined in case law.  In *United States v. California*, the

Supreme Court found that the Antiquities Act empowered the President to reserve submerged

lands and waters within the area controlled by the federal government. 436 U.S. at 36.  That case

involved President Franklin Roosevelt's issuance of Proclamation No. 2281, 52 Stat. 1541 (Apr.

26, 1938), in 1938 to designate most of Anacapa and Santa Barbara Islands as the Channel

Islands National Monument.  *Id*. at 33-34.  Eleven years later, President Truman issued

Proclamation No. 2825, 63 Stat. 1258 (Feb. 9, 1949), enlarging the monument to include the

waters within one nautical mile of the shoreline the islands.  *Id*. at 34.  At the time of the

proclamation at issue, the federal government exercised dominion and control over the

submerged lands and waters within these belts as a result of the prior decision in *United States v.*

*California*, 332 U.S. 19 (1947), *supplemented by United States v. California*, 332 U.S. 804

(1947) (per curiam).  436 U.S. at 36 (holding the United States was "possessed of paramount

rights in, and full dominion and power over, the lands, minerals and other things underlying the

Pacific Ocean lying seaward of the ordinary low-water mark on the coast of California . . .

extending seaward three nautical miles . . . .).  The Supreme Court stated "[t]here can be no

serious question . . . that the President . . . had power under the Antiquities Act to reserve the

submerged lands and waters . . . ."  *Id*. & 36 n.9 ("Although the Antiquities Act refers to 'lands,'

this Court has recognized that it also authorizes the reservation of waters located on or over

federal lands.").

Similarly, in *Alaska v. United States*, the Supreme Court relied on the holding in *United*

*States v. California* to find that the Antiquities Act permitted the creation of the Glacier Bay

National Monument, which included submerged lands, and allowed the United States to retain

title to the underlying lands.  545 U.S. 75, 103 (2005).  These cases refute the idea that

submerged lands and the waters above them cannot be part of a national monument created

pursuant to the Antiquities Act.

Moreover, this Monument is not the first marine national monument.  In addition to the

designations discussed above, there have been other marine monuments created in recent years.

In 2006, the Papahānaumokuākea Marine National Monument was created by President George

W. Bush, comprising 139,793 square miles.  Proclamation No. 8031, 71 Fed. Reg. 36,443 (June

15, 2006), *amended by* Proclamation No. 8112, 72 Fed. Reg. 10,031 (Feb. 28, 2007).  In 2009,

President Bush also created the Marianas Trench Marine National Monument, including 95,216

square miles of the waters and submerged lands of three islands, the submerged lands of 22

volcanic sites, and the Mariana Trench; the Pacific Remote Islands Marine National Monument,

including 86,888 square miles surrounding several islands in the Pacific southwest of Hawaii;

and the Rose Atoll Marine National Monument, including 13,451 square miles of ocean waters

and ten islands and atolls of the Northwestern Hawaiian islands.  Proclamation No. 8335, 74 Fed.

Reg. 1557 (Jan. 6, 2009); Proclamation No. 8336, 74 Fed. Reg. 1565 (Jan. 6, 2009);

Proclamation No. 8337, 74 Fed. Reg. 1577 (Jan. 6, 2009).  Thus, the assertion underlying

Plaintiffs' claims—that submerged lands cannot be included in a designated national

monument—is contrary to both the plain language of the Antiquities Act and the exercise of

authority under the Act by Presidents over the past 70 years.

## 2.    The United States owns or controls the Monument area

As explained above, this Court should first look to the language of the Proclamation to

determine if the President acted within his authority in designating the Monument.  Four times

throughout the Proclamation, it states that the canyons and seamounts are situated upon lands

owned or controlled by the Federal Government.  Proc. 9496, 81 Fed. Reg. at 65,161, 65,163.

So, the Proclamation also clearly acknowledges this requirement and states that the designation

complies with it.

The rules of statutory construction also support the President's authority to designate the

monument in this area as expressed in the Proclamation.  Since neither word is defined, the Court

should apply the ordinary or natural meaning to the words "own" and "control." *Meyer*, 510

U.S. at 476.  "Ownership" is defined as "the bundle of rights allowing one to use, manage, and

enjoy property, including the right to convey it to others."  BLACK'S LAW DICTIONARY (10th ed.

2014).  The word "control" means "to exercise power or influence over."  BLACK'S LAW DICTIONARY (10th ed. 2014).  Further, the statute requires the United States to either own *or* control the land, not both.  So, no ambiguity exists as to what "owned or controlled" means in the Antiquities Act.

The law of the sea confirms this conclusion.  Submerged territory off the United States' coast includes both territorial sea and the exclusive economic zone.  The territorial sea is the area immediately adjacent to the coast of a nation, and international law permits a nation to claim up to twelve miles from its coast as its territorial sea.  RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 511(a) (AM. LAW INST., Mar. 2018 Update) ("Restatement Third").  Although for many years the United States claimed only a three-mile territorial sea, President Reagan extended the territorial sea to twelve miles in 1988. Proclamation No. 5928, 3 C.F.R. § 547 (1989).

Beyond the territorial sea is the Exclusive Economic Zone or "EEZ," where most of the Monument at issue is located.  The EEZ is "a belt of sea beyond the territorial sea that may not exceed 200 nautical miles from the baseline from which the breadth of the territorial sea is measured."  Restatement Third § 511(d).  Under customary international law, coastal states may take certain actions to protect the marine environment in their EEZ.  Restatement Third § 514 cmt. c.  In 1983, President Reagan established the EEZ of the United States out to 200 miles. Proclamation. No. 5030, 3 C.F.R. § 22 (1984).  In the statement accompanying the proclamation, President Reagan explained:  "[t]he Exclusive Economic Zone established today will also enable the United States to take limited additional steps to protect the marine environment."  Statement on United States Oceans Policy, 1 Pub. Papers of Ronald Reagan at 379.

Several statutes regulate activities in the EEZ.  In 1972, Congress adopted the National

Marine Sanctuaries Act, which is aimed at protecting sensitive areas of the marine environment,

including the EEZ.  *See* 16 U.S.C. §§ 1431-1445(b).  This statute permits the Secretary of

Commerce to designate marine sanctuaries within the Exclusive Economic Zone based on twelve

factors explicitly set out in the statute, after providing notice to the public and conducting

consultation with state regulators.  *Id.*  The Magnuson-Stevens Fishery Conservation and

Management Act, which was enacted in 1976, provides for sovereign rights and exclusive

fishery management authority for the United States within the EEZ.  *See* 16 U.S.C. §§ 1801-

1803.  Additionally, the Outer Continental Shelf Lands Act demonstrates Congressional intent to

extend jurisdiction and control of the United States to the outer continental shelf, which includes

the EEZ.  *See* 43 U.S.C. §§ 1331-1356b.

Accordingly, the quantum of United States "control" over the submerged lands and

waters within the EEZ allows the President to establish a national monument under the

Antiquities Act to protect the marine environment.  First, under customary international law and

the 1983 proclamation, the United States maintains a significant amount of overall authority to

exercise restraining and directing influence over the EEZ.  Restatement Third § 514(1)(a); Proc.

No. 5030; *see also* Proclamation. No. 2667, 3 C.F.R. § 67 (1943-1948) (President Truman

proclaims "the United States regards the natural resources of the subsoil and sea bed of the

continental shelf beneath the high seas but contiguous to the coasts of the United States as

appertaining to the United States, subject to its jurisdiction and control.").  While the EEZ may

not belong to the United States in the traditional property sense, no other sovereign entity

possesses or asserts influence over the EEZ.  Second, the United States possesses substantial

authority under international law to regulate the EEZ for the purpose of protecting the marine

environment.  *See also* U.S. Dep't of Justice, Office of Legal Counsel, Mem. Op. for the

Solicitor Dep't of Interior, *Administration of Coral Reef Resources in the Northwest Hawaiian*

*Islands*, 2000 WL 34475732 (Sept. 15, 2000) (finding that the President could use his authority

to establish a national monument in the EEZ to protect marine resources).

The plain language of the Antiquities Act shows Congress's intent for the Act to extend

to any area that is in fact "owned or controlled" by the United States.  This means that the area

covered by the Act can change over time as new lands and areas become subject to the

sovereignty of the nation.  And lands within the EEZ were subject to the sovereign control of the

United States as of the Monument's designation.

**B.      The President Acted Within the Scope of His Authority In Determining the Size and Configuration of the Monument.**

In the Antiquities Act, Congress expressly left the boundaries of a national monument to

the President's "discretion."  As such, it is up to the President to decide the "limits of the

parcels" that comprise "the smallest area compatible with the proper care and management of the

objects to be protected."  54 U.S.C. § 320301(b).  The Act includes no language further

constraining the President's discretionary authority in this regard.  And reviewing the face of the

Proclamation, it plainly comports with the Antiquities Act and is a proper exercise of the

President's authority to designate a monument reservation of the smallest area compatible with

the protection of the relevant objects.

The Proclamation notes expressly that the Antiquities Act authorizes the President "to

reserve . . . parcels of land, the limits of which shall be confined to the smallest area compatible

with the proper care and management of the objects to be protected."  Proc. 9496, 81 Fed. Reg.

at 65,163.  The Proclamation then continues:  "[t]he Federal lands and interests in lands reserved

consist of approximately 4,913 square miles, which is the smallest area compatible with the

proper care and management of the objects to be protected." *Id*.  Instead of the entire area being

designated, the Monument comprises two units—the Canyons unit and the Seamounts unit.  *Id*.

at 65,161.  The Proclamation describes the three underwater canyons, which cover

approximately 941 square miles, and the four seamounts that encompass 3,972 square miles.  *Id*.

These areas are identified by coordinates shown on the map included above.  The Proclamation

then proceeds to explain that the canyons and seamounts are two distinct geological features that

support certain ecological communities, including at least 54 species of deep-sea corals that

provide food, spawn habitat, and shelter an array of fish and invertebrate species.  *Id*.  The

Proclamation provides significant detail as to each component of the Monument to show the

significance to historic and scientific interests, noting that "[m]uch remains to be discovered

about these unique, isolated environments and their geological, ecological and biological

resources."  *Id*. at 65,163.

Plaintiffs object that the marine ecosystem is not an "object," assert that the Monument is

too large, and ask the Court to second guess the boundaries established by the President.  Compl.

¶¶ 73-75.  The Supreme Court has already rejected Plaintiffs' first argument.  In *Tulare II*, 306

F.3d at 1141-42, the D.C. Circuit observed that the proclamation designating Giant Sequoia

National Monument included land features such as "bold granitic domes, spires, and plunging

gorges," "an enormous number of habitats," and "limestone caverns and . . . unique

paleontological resources documenting tens of thousands of years of ecosystem change."  The

court further found that "[i]nclusion of such items as ecosystems and scenic vistas in the

Proclamation did not contravene the terms of the statute by relying on nonqualifying features,"

citing the Supreme Court's rejection of a similar argument in *Cappaert*.  *Id*. at 1142 (citation

omitted).  Any argument from Plaintiffs that land features and other natural objects are not

qualifying objects supporting creation of a national monument would also fail.  The Court determined in *Cameron*, 252 U.S. at 455-56, that the Grand Canyon "is an object of unusual scientific interest" supporting the establishment of the Grand Canyon National Monument.  The Court also found in *Cappaert*, 426 U.S. at 141-42, that a pool of water and unique desert fish were "objects of historic and scientific interest."

Plaintiffs' argument that the Monument is not confined to the "smallest area compatible" with preservation of the designated objects, to the extent deemed justiciable, should also be rejected.  Compl.  ¶ 72.  Courts must "follow the cardinal rule that a statute is to be read as a whole . . . since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (internal citation omitted).  Under the Antiquities Act, the purpose of a monument designation is to protect the objects of historic or scientific interest.  In this context, the phrase "smallest area compatible" is tied to this purpose and necessarily depends upon the discretion of the President.  Even putting aside the broad discretion given to the President to designate and define a monument, there is no room to argue that the Plaintiffs' interpretation of the smallest area (or for that matter the Court's) should be substituted for that of the President.

A similar argument was rejected in *Tulare I*.  There, the plaintiffs argued that the Giant Sequoia National Monument was physically over-inclusive, based on their allegation that the Giant Sequoia groves constituted only about 6% of the monument area.  *Tulare County v. Bush* ("*Tulare I*"), 185 F. Supp. 2d 18, 23 (D.D.C. 2001), *aff'd*, 306 F.3d 1138 (D.C. Cir. 2002).  The district court found that the proclamation met the requirements of the Antiquities Act by specifically stating that the monument land reservation consists of "approximately 327,769 acres, which is the smallest area compatible with the proper care and management of the objects . . . ."

*Id.* at 25.  The D.C. Circuit also acknowledged the proclamation's finding that the land area reserved was the smallest area compatible, stating that "[t]he Monument . . . contains groves of giant sequoias, the world's largest trees, and their surrounding ecosystem."  *Tulare II*, 306 F.3d at 1140.

As in *Tulare II*, the Proclamation at issue plainly satisfies the applicable standard.  The Proclamation specifically states that the Monument consists "of approximately 4,913 square miles, which is the smallest area compatible with the proper care and management of the objects to be protected."  Proc. 9496, 81 Fed. Reg. 65,163.  It repeatedly "adverts to the statutory standard" for designating monument objects and reserving monument lands, *Tulare II*, 306 F.3d at 1141, and it "recites grounds for"  the Monument's boundary that "comport with the Act's policies and requirements," *Mountain States*, 306 F.3d at 1137.  Given the detail describing the interplay among the canyons, seamounts, and the ecosystem they compose, the President carefully considered what area should be included in the Monument.  Plaintiffs' disagreement with the size or configuration of the Monument does not equate to the Proclamation being facially invalid.  This "compel[s] a finding in favor of the President's action[] [which is] essentially the end of the legal analysis."  *UAC*, 316 F. Supp. 2d at 1183.  Because no further inquiry is appropriate, Plaintiffs' Complaint should be dismissed for failure to state a claim.

## II.    Plaintiffs' Claims Against The Agency Defendants Are Not Ripe.

Plaintiffs' claims against the Agency Defendants are not ripe for adjudication.  "The injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977).  In the absence of any site-specific decision implementing the Proclamation, Plaintiffs present an "abstract disagreement[] over

administrative policies" that seeks "judicial interference [before] an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 148-49. The ripeness doctrine "has both constitutional and prudential facets." *See Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 632 (D.C. Cir. 2017), *petition for cert. docketed*, No. 17-580 (U.S. Oct. 18, 2017) *and petition for cert. docketed by Fairholme Funds, Inc. v. Fed. Hous. Finance Agency*, No. 17-591 (U.S. Oct. 20, 2017).  A court can find a case unripe under either facet. *See id.*  Plaintiffs' claims against the Agency Defendants are unripe under both.

The first facet (the "jurisdictional" or "constitutional" facet) "is subsumed into the Article III requirement of standing, which requires a petitioner to allege inter alia an injury-in-fact that is 'imminent' or 'certainly impending.'" *Chlorine Inst., Inc. v. Fed. R.R. Admin.*, 718 F.3d 922, 927 (D.C. Cir. 2013) (citation omitted)).  Ultimately, this facet of "the ripeness requirement excludes cases not involving present injury." *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999).  As described above, Plaintiffs are unable to demonstrate injury that is imminent or certainly impending.  The only times that Plaintiffs mention Agency Defendants in their Complaint are to identify them in paragraphs 15-17 and to state their role in managing the Monument in paragraphs 59-62 and 68.  Both references recognize that the Agency Defendants have yet to act in reference to the Monument.  Compl. ¶¶ 15-17, 59-62. Plaintiffs fail to allege any injuries from these Agency Defendants, and any potential future injuries would be the result of future, discrete agency decisions that would then be subject to judicial review.

Plaintiffs likewise have failed to articulate claims that are prudentially ripe against these Federal Defendants.  The D.C. Circuit assesses prudential ripeness based on "'the fitness of the issues for judicial decision' and the extent to which withholding a decision will cause "hardship

to the parties.'" *Am. Petroleum Inst. v. EPA*, 683 F3d 382, 387 (D.C. Cir. 2012) (quoting *Abbott Labs*, 387 U.S. at 149).  Among other factors, the fitness for review "depends on whether it is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Id.* (citations omitted).  Here, Plaintiffs' claims are built upon injuries that cannot occur until the Agency Defendants have taken specific steps to authorize the action Plaintiffs identify as the source of harm.  And while the 2016 Proclamation establishes a three-year timeframe for the preparation of a joint management plan for activities within the Monument, it does not *itself* create any implementing regulations that impact Plaintiffs' interests.

Further, delayed review will result in no hardship to Plaintiffs.  If the Agency Defendants later issue specific regulations, authorizing a particular development or other use that will cause Plaintiffs' members a concrete and particularized injury, then Plaintiffs may challenge such decision at that time.  *See Wyo. Outdoor Council*, 165 F.3d at 50–51 ("There is no 'hardship' here since [plaintiff] may pursue its NEPA claim based on the Forest Service's compliance as of the date of lease issuance").  And if Plaintiffs' claim against the President were to succeed, then any claim against the Agency Defendants never materializes.

Plaintiffs' challenge to Agency Defendants' future management regime is necessarily premature:  there has been no final agency action or decision regarding what that management regime with respect to the Monument will entail.  *Cf. Tulare I*, 185 F. Supp. 2d at 30 ("The plaintiffs cannot demonstrate ripeness with respect to their claim that the current management of the Monument violates their rights because the Secretary of Agriculture has not yet implemented the final management plan called for in the Proclamation.").  Accordingly, the Court lacks

subject-matter jurisdiction as to these Defendants, and these premature claims should be dismissed.

### III.     Plaintiffs Fail To State A Claim Against Defendant CEQ Chairman.

Defendant CEQ Chairman is not a proper party to this action.  A complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, citations, and alteration omitted).  When identifying this Defendant, Plaintiffs allege that the former CEQ Chairman, Nancy Sutley, consulted with the President and collected evidence to support the Proclamation.  Compl. ¶ 18.  Even assuming the truth of the assertion made in this one paragraph of the Complaint, this Federal Defendant did not have the authority to make any decisions or take any actions about which Plaintiffs now complain.  Throughout the entire Complaint, Plaintiffs make no further allegations regarding this Defendant, nor do they provide grounds for any relief sought from this Defendant.  *See Jackson v. District of Columbia*, 826 F. Supp. 2d 109, 124 (D.D.C. 2011) (dismissing a defendant as duplicative and an ineffective use of judicial resources), *aff'd*, No. 11-7156, 2013 WL 500809 (D.C. Cir. Jan. 18, 2013).  Thus, dismissal of this case against Defendant CEQ Chairman is proper.

## CONCLUSION

The President properly exercised the broad discretion afforded to him in the Antiquities Act to designate a national monument fully in line with the purposes of this statute.  This fact is plain from the terms of the Proclamation, which define the historic and scientific objects of the Monument and describe the rationale for the established boundaries.  Accordingly, this Court should not entertain a challenge to the exercise of the President's discretion under the Antiquities

Act to establish and define the boundaries of the Monument.  Further, Plaintiffs' Complaint fails to state a claim premised on a lack of authority for this Monument, and this case should be dismissed in its entirety.  The Court should therefore dismiss this action for failure to state a claim upon which relief can be granted.

In the event the Court does not dismiss this action in its entirety, the Court should dismiss as premature Plaintiffs' claims against the Agency Defendants, and it should dismiss Plaintiffs' claims against Defendant CEQ Chairman for failure to state a claim.

Respectfully submitted, this 16th day of April, 2018,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division


_/s/ Davené D. Walker_____
Davené D. Walker
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone:  202-353-9213
Fax:  202-305-0506
davene.walker@usdoj.gov

Attorneys for Federal Defendants