**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, *et al.*,<br><br>      *Plaintiffs*,<br>   v.<br><br>WILBUR ROSS, *et al.*,<br><br>      *Defendants*,<br><br>and<br><br>NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.*,<br><br>      *Defendant-Intervenors*. | Case No. 17-cv-00406 (JEB) |

**[PROPOSED] BRIEF OF PROFESSORS ALISON RIESER, DONNA R. CHRISTIE, AND JOSH EAGLE AS AMICI CURIAE IN RESPONSE TO GOVERNMENT DEFENDANTS' MOTION TO DISMISS AND DEFENDANT-INTERVENORS' RESPONSE**

**TABLE OF CONTENTS**

Page

INTERESTS OF AMICI CURIAE ................................................................................................1

SUMMARY OF THE ARGUMENT .............................................................................................2

ARGUMENT ...................................................................................................................................3

I.   THE EXCLUSIVE ECONOMIC ZONE UNDER INTERNATIONAL LAW .................3

II.  THE UNITED STATES' LONGSTANDING RECOGNITION OF THE EEZ ...............5

III. THE UNITED STATES' CONTROL OF THE EEZ ........................................................8

IV.  NATIONAL MONUMENTS AND THE ANTIQUITIES ACT OF 1906: "LAND OWNED OR CONTROLLED" ........................................................................................9

V.   THE NORTHEAST CANYONS AND SEAMOUNTS MARINE NATIONAL MONUMENT ...................................................................................................................11

CONCLUSION ..............................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Continental Shelf (*Libyan Arab Jamahiriya v. Malta*), 1985, I.C.J. 13 .........................................5

*Mayaguezanos por la Salud y el Ambiente v. U.S.*,
   198 F.3d 297, 305 (1st Cir. 1999)..................................................................................................8

North Sea Continental Shelf Cases, 1969 ICJ 3 ............................................................................5

*U.S. v. Matute*,
   No. 06-20596, 2013 WL 6384610 (S.D. Fla. Aug. 20, 2013)......................................................8

**Statutes**

33 C.F.R. § 2.30 (2017)...................................................................................................................9

48 Fed. Reg. 10605 (March 14, 1983).............................................................................................6

60 Fed. Reg. 43825 (Aug. 23, 1995)...............................................................................................7

71 Fed. Reg. 36443 (June 15, 2006)........................................................................................10, 11

74 Fed. Reg. 1557 (Jan. 6, 2009)...............................................................................................10, 11

74 Fed. Reg. 1565 (Jan. 6, 2009)...................................................................................................10

74 Fed. Reg. 1577 (Jan. 6, 2009)...................................................................................................10

79 Fed. Reg. 58,645 (Sept. 25, 2014)............................................................................................10

81 Fed. Reg. 60,227 (August 26, 2016) ........................................................................................10

81 Fed. Reg. 65161 (Sept. 21, 2016).............................................................................11, 12, 13, 14

16 U.S.C. § 1432 (2016)..................................................................................................................7

16 U.S.C. § 1435 (2016)..................................................................................................................9

16 U.S.C. § 1801 (2016)..................................................................................................................9

16 U.S.C. § 1802 (2016)..................................................................................................................8

33 U.S.C. § 1223 (2016)..................................................................................................................9

33 U.S.C. § 1224 (2016)..................................................................................................................9

# TABLE OF AUTHORITIES
(continued)

Page(s)

54 U.S.C. § 320301 (2016) ..................................................................................................... 2, 9

**Other Authorities**

*Administration of Coral Reef Resources in the Northwest Hawaiian Islands*,
    Office of Legal Counsel (Sept. 15, 2000) ............................................................................. 9

*Death Valley Basic Information*, Nat'l Park Serv.,
    https://www.nps.gov/deva/planyourvisit/basicinfo.htm (last visited April 12,
    2018) ..................................................................................................................................... 2

*First marine national monument created in Atlantic,* National Oceanic and
    Atmospheric Administration, http://www.noaa.gov/news/first-marine-
    national-monument-created-in-atlantic (last visited April 4, 2016) ................................ 2, 12

*Glacier Bay*, Nat'l Park Serv., https://www.nps.gov/glba/index.htm (last visited
    April 12, 2018) ..................................................................................................................... 2

Restatement (Third) of Foreign Relations Law § 514 (1987) ....................................................... 8

Stephen Fietta and Robin Cleverly*, A Practitioner's Guide to Maritime Boundary
    Delimitation* (Oxford Univ Press, 2016). ............................................................................ 4

United Nations Convention on the Law of the Sea ........................................................... 3, 5, 13

United States Ocean Policy, 19 Weekly Comp. Pres. Doc. 383 (Mar 10, 1983) ........................... 6

*U.S. Exclusive Economic Zone*, Nat'l Oceanic & Atmospheric Admin.,
    https://www.gc.noaa.gov/documents/2011/012711_gcil_maritime_eez_map.p
    df (last visited April 12, 2018) ............................................................................................ 2

Vienna Convention on the Law of Treaties (1980) ....................................................................... 5

White House Fact Sheet US Ocean Policy (Mar 10, 1983) ....................................................... 6, 7

*What is the EEZ?,* National Oceanic and Atmospheric Administration,
    https://oceanservice.noaa.gov/facts/eez.html ...................................................................... 7

## INTERESTS OF AMICI CURIAE[1]

Professor Alison Rieser is a professor of law and geography at the University of Hawai'i where she teaches and writes about marine area governance and policy. Professor Rieser taught international law of the sea and marine resources law at the University of Maine School of Law for three decades and became professor of law emerita at Maine Law before her appointment as the Dai Ho Chun distinguished professor at the University of Hawai'i to direct its interdisciplinary, graduate ocean policy program. She has advised government agencies at the federal and state levels and authored numerous law review articles on U.S. and international marine resources law.

Professor Donna R. Christie, professor emerita of law, Florida State University, is the co-author of the leading casebook on ocean and coastal law with co-amici Professor Alison Rieser. Professor Christie has also authored numerous law review articles and, for over four decades, advised the State of Florida in matters of U.S. coastal and ocean law.

Professor Josh Eagle is the Solomon Blatt Professor of Law at the University of South Carolina.  Professor Eagle has taught ocean and coastal law, both international and U.S., for almost two decades.  Professor Eagle is the author of casebooks on coastal law and natural resources law, as well as numerous publications on government regulation of ocean spaces like the area at issue in this lawsuit.

Professors Rieser, Christie, and Eagle's interest in this litigation is to offer the Court an overview of the applicable principles of international law of the sea which are a part of U.S. law. These principles support the conclusion that the creation of the Northeast Canyons and Seamounts National Marine Monument (the "Monument") was entirely consistent with

---

[1] No person or entity other than amici and their counsel authored or made a monetary contribution to the preparation or submission of this brief.

international law, as is the federal government's continuing protection of the Monument. As described herein, the United States rightfully controls the area of the Monument under international law. As such, the creation of the Monument was consistent with the President's authority under the Antiquities Act of 1906 to designate national monuments on land "owned or controlled" by the federal government.

## SUMMARY OF THE ARGUMENT

The Northeast Canyons and Seamounts National Marine Monument was created in 2016 and protects nearly 5,000 square miles off the coast of New England—an area slightly smaller than Death Valley National Park in California or Glacier Bay National Park in Alaska,[2] located in a far larger expanse of ocean. The Antiquities Act of 1906 allows the President to create national monuments "on land owned or controlled by the Federal Government." 54 U.S.C. § 320301(a) (2016). The Monument consists of submerged land that is controlled by the Federal Government. It is located within the United States' exclusive economic zone ("EEZ") (of which it constitutes approximately 0.1% of the total geographic area).[3] Under the international law of the sea, a country controls the area of its EEZ and has the authority to conserve and manage natural resources within the EEZ. The United States has consistently recognized and exercised this control within its EEZ. The designation of the Monument under the Antiquities Act was carefully crafted to comply with the United States' obligations under international law, and was

---

[2] *See First marine national monument created in Atlantic*, Nat'l Oceanic & Atmospheric Admin. (Sept. 19, 2016), http://www.noaa.gov/news/first-marine-national-monument-created-in-atlantic; *Death Valley Basic Information*, Nat'l Park Serv., https://www.nps.gov/deva/planyourvisit/basicinfo.htm (last visited April 12, 2018); *Glacier Bay*, Nat'l Park Serv., https://www.nps.gov/glba/index.htm (last visited April 12, 2018).
[3] *See The United States Is an Ocean Nation: Map of the U.S. Exclusive Economic Zone*, Nat'l Oceanic & Atmospheric Admin., *https://www.gc.noaa.gov/documents/2011/012711_gcil_maritime_eez_map.pdf* (last visited April 12, 2018).

consistent with prior designations of marine monuments within the EEZ by the Bush (43) and Obama administrations. The creation and protection of the Monument under the Antiquities Act were, and continue to be, consistent with the rights of the United States under the international law of the sea and they conform to the United States' interpretation and application of international law. In short there is nothing novel about the Monument's creation or continued protection and there is no doubt that Monument is on land controlled by the United States.

## ARGUMENT

I.   **The Exclusive Economic Zone Under International Law**

Under international law, each coastal State controls the waters and seafloor extending 200 nautical miles from its coast for its exclusive economic use. This control is recognized by the international community and has its basis in the United Nations Convention on the Law of the Sea ("UNCLOS") and customary international law.

Under the UN Convention on the Law of the Sea, every State has a right to establish a territorial sea, which may extend from the State's baseline (measured from the low-water line along its coast) to no more than 12 nautical miles. UNCLOS Art. 3–5. Within its territorial seas, a coastal State exercises sovereignty over the waters, airspace, and bed and subsoil. UNCLOS Art. 2.

Beyond the territorial sea of a coastal State lies the EEZ. A State's EEZ extends from the outer limit of the State's territorial sea to 200 nautical miles from the coast. UNCLOS Art. 55 ("The exclusive economic zone is an area beyond and adjacent to the territorial sea . . ."); UNCLOS Art. 57 (describing the EEZ as not extending "beyond 200 nautical miles from the baselines from which the breadth of the territorial sea is measured"). In the EEZ, a State has "sovereign rights for the purpose of exploring and exploiting, conserving and managing the natural resources, whether living or non-living, of the waters superjacent to the seabed and of the

seabed and its subsoil, and with regard to other activities for the economic exploitation and exploration of the zone, such as the production of energy from the water, currents and winds." UNCLOS Art. 56(1)(a).  The State also has "jurisdiction …with regard to: (i) the establishment and use of artificial islands, installations and structures; (ii) marine scientific research; (iii) the protection and preservation of the marine environment." UNCLOS Art. 56(1)(b).  In exercising their rights in their EEZ however, States must act in a manner compatible with the freedoms granted to other States under the Convention, Art. 56(2), such as the freedoms of "navigation and overflight and of the laying of submarine cables and pipelines, and other internationally lawful uses of the sea related to these freedoms, such as those associated with the operation of ships, aircraft and submarine cables and pipelines," Art. 58(1).

The UNCLOS delimitation of the EEZ and territorial sea is depicted on the diagram below:



*Source: Stephen Fietta and Robin Cleverly, A Practitioner's Guide to Maritime Boundary Delimitation (Oxford Univ Press, 2016).*

UNCLOS was a product of the third United Nations Conference on the Law of the Sea, which concluded in 1982. UNCLOS came into force in 1994, after the 60th nation ratified the treaty. Today, 168 countries and the European Union have ratified UNCLOS. UNCLOS is a treaty, which means it is only binding upon those states that ratify or accede to the treaty. Vienna Convention on the Law of Treaties (1980) Art. 2, 26, 34–36. However, a rule set forth in a treaty may become binding on third States through its adoption as a customary international law. Vienna Convention Art. 38 ("Nothing in articles 34 to 37 precludes a rule set forth in a treaty from becoming binding upon a third State as a customary rule of international law, recognized as such."). In order for a rule to become binding customary international law on all States, the acts concerned must "amount to a settled practice" and be carried out in such a way "as to be evidence of a belief that this practice is rendered obligatory by the existence of a rule of law requiring it." North Sea Continental Shelf Cases, 1969 ICJ 3, 47, para. 77.

While UNCLOS has not been ratified by every State, many of its key principles have become customary international law, including the concept and delineation of the EEZ. In 1985, the International Court of Justice, considering a dispute between several States, stated: "It is in the Court's view incontestable that, apart from those provisions, the institution of the exclusive economic zone, with its rule on entitlement by reason of distance, is shown by the practice of States to have become a part of customary law." Continental Shelf (*Libyan Arab Jamahiriya v. Malta*), 1985, I.C.J. 13, 33, para. 34. Thus the principles applicable to the EEZ, as outlined in UNCLOS, are binding on all States.

II.     **The United States' Longstanding Recognition of the EEZ**

While the United States has never ratified UNCLOS, it is bound by customary international law and has accepted and recognized the EEZ, as described in UNCLOS, as customary international law.

In 1983, shortly after the third United Nations Convention on the Law of the Sea concluded, President Reagan issued Proclamation 5030, proclaiming the sovereign rights and jurisdiction of the United States within the EEZ. Exclusive Economic Zone of the United States of America, Proclamation 5030, 48 Fed. Reg. 10605 (March 14, 1983). The Proclamation states that "international law recognizes that, in a zone beyond its territory and adjacent to its territorial sea, known as the Exclusive Economic Zone, a coastal State may assert certain sovereign rights over natural resources and related jurisdiction." *Id.* Much of the Proclamation mirrors the language in UNCLOS and it specifically recognizes the U.S.'s sovereign rights for the purpose of "exploring, exploiting, conserving and managing natural resources, both living and non-living," and jurisdiction with regard to "the protection and preservation of the marine environment." *Id.* The Proclamation also states that the U.S. will "exercise these sovereign rights and jurisdiction in accordance with the rules of international law" and that within the EEZ "all States enjoy the high seas freedoms of navigation, overflight, the laying of submarine cables and pipelines, and other internationally lawful uses of the sea." *Id.*

President Reagan's accompanying statement explained that while the United States was not signing UNCLOS due to concerns with its provisions on deep seabed mining, "the convention also contains provisions with respect to traditional uses of the oceans which generally confirm existing maritime law and practice." United States Ocean Policy, 19 Weekly Comp. Pres. Doc. 383 (Mar 10, 1983). The accompanying White House Fact Sheet noted: "The concept of the EEZ is already recognized in international law" and "is reflected in" UNCLOS. White House Fact Sheet US Ocean Policy (Mar 10, 1983). It further noted: "The United States is willing to respect the maritime claims of others, including economic zones, that are consistent

with international law as reflected in the Convention, if U.S. rights and freedoms in such areas under international law are respected by the coastal state." *Id*.

The U.S. EEZ is depicted in the following NOAA map:

*Source: National Oceanic and Atmospheric Administration, What is the EEZ?, https://oceanservice.noaa.gov/facts/eez.html (last updated Oct. 10, 2017).*

The Department of State published the coordinates of the U.S. EEZ outer limit in 1995. Exclusive Economic Zone and Maritime Boundaries; Notice of Limits, 60 Fed. Reg. 43825 (Aug. 23, 1995).

Congress and the courts have similarly recognized the status of the EEZ in customary international law. In the National Marine Sanctuaries Act, Congress defined "marine environment" as "those areas of coastal and ocean waters, the Great Lakes and their connecting waters, and submerged lands over which the United States exercises jurisdiction, including the exclusive economic zone, consistent with international law." 16 U.S.C. § 1432(3) (2016). And in the Magnuson-Stevens Fishery Conservation and Management Act, Congress defined the

"exclusive economic zone" as "the zone established by Proclamation Numbered 5030, dated March 10, 1983." 16 U.S.C. § 1802(11) (2016).

The federal judiciary similarly has recognized that "[t]he United States has taken the position that the twelve-mile territorial sea and the two-hundred-mile EEZ are declarative of customary international law." *Mayaguezanos por la Salud y el Ambiente v. U.S.*, 198 F.3d 297, 305 (1st Cir. 1999). In *Mayaguezanos*, the First Circuit explained that "[t]he interests of a coastal state in its EEZ largely have to do with development of natural resources and the availability of scientific research." *Id.* Other court cases have similarly recognized the EEZ as described in UNCLOS as customary international law. *See, e.g., U.S. v. Matute*, No. 06-20596, 2013 WL 6384610 at *5–6 (S.D. Fla. Aug. 20, 2013) (stating that "the United States recognizes UNCLOS as customary international law" and "[t]he United States recognizes the EEZ").

Finally, the Restatement (Third) of Foreign Relations Law § 514 similarly defines the EEZ by reference to UNCLOS and summarizes its status as follows:

> Recent practice of states, supported by the broad consensus achieved at the Third United Nations Conference on the Law of the Sea, has effectively established as customary law the concept of the exclusive economic zone, the width of the zone (up to 200 nautical miles), and the basic rules governing it. These are binding, therefore, on states generally even before the LOS Convention comes into effect and thereafter even as to states not party to the Convention. In those respects the Convention is an authoritative statement of customary law.

Restatement (Third) of Foreign Relations Law § 514 cmt. a (1987). The Restatement provides that the coastal state has "sovereign rights for the purpose of exploring, exploiting, conserving, and managing the natural resources of the sea-bed and subsoil and of the superjacent waters" and authority to regulate "the protection of the marine environment." *Id.* at § 514(1).

### III. The United States' Control of the EEZ

The United States has historically exercised control over its EEZ for various purposes, including marine conservation. For example, the Magnuson-Stevens Fishery Conservation and

Management Act governs fisheries management within the United States EEZ and prohibits commercial foreign fishing vessels without permits.  16 U.S.C. § 1801 *et seq*.  Similarly, the National Marine Sanctuaries Act established a federal program to create National Marine Sanctuaries within the EEZ and prohibits destroying or injuring sanctuary resources.  16 U.S.C. § 1435 *et seq*.  The National Marine Sanctuaries Act is careful to conform to the international law of the sea and provides that the statute and regulations "shall be applied in accordance with generally recognized principles of international law."  *Id.*  Finally, to safeguard shipping lanes, the Ports and Waterways Safety Act allows the U.S. Coast Guard to designate traffic separation schemes in the EEZ for vessels approaching or transiting away from the U.S. territorial sea and ports. 33 U.S.C. § 1223(a) (2016); 33 C.F.R. § 2.30 (2017) (definition of jurisdictional terms, EEZ).  To ensure consistency with international law, the Coast Guard consults with the Secretary of State and other departments of the Executive Branch with foreign affairs responsibilities. 33 U.S.C. § 1224 (2016).

**IV.     National Monuments and The Antiquities Act of 1906: "Land Owned or Controlled"**

The United States has, more than once, used its sovereign rights and jurisdiction within the EEZ to establish national monuments.  The Antiquities Act of 1906 allows the President to create national monuments around objects of historic or scientific interest "on land owned or controlled by the Federal Government." 54 U.S.C. § 320301(a) (2016).  In 2000, the U.S. Department of Justice's Office of Legal Counsel issued a memorandum concluding that the President could establish a national monument in the territorial sea or EEZ. Administration of Coral Reef Resources in the Northwest Hawaiian Islands, Office of Legal Counsel (Sept. 15, 2000).  The Office of Legal Counsel concluded that UNCLOS "appears not only to allow the U.S. to take action to protect marine resources, but also to require some such actions." *Id.*

Using the Antiquities Act, President George W. Bush created the Northwestern Hawaiian Islands Marine National Monument in 2006, which was renamed Papahānaumokuākea Marine National Monument in 2007. Presidential Proclamation 8031, 71 Fed. Reg. 36443 (June 15, 2006). The Pacific Remote Islands Marine National Monument, Rose Atoll Marine National Monument, and Marianas Trench Marine National Monument were all established in January 2009 by President Bush using the Antiquities Act. Presidential Proclamation 8335, 74 Fed. Reg. 1557 (Jan. 6, 2009); Presidential Proclamation 8336, 74 Fed. Reg. 1565 (Jan. 6, 2009); Presidential Proclamation 8337, 74 Fed. Reg. 1577 (Jan. 6, 2009). These national monuments all lie within the United States' EEZ or territorial seas. The northern and southern boundaries of the Marianas Trench Marine National Monument extend to the limits of the United States' EEZ. *Id.* The boundaries of portions of the Pacific Remote Islands Marine National Monument were expanded to the limits of the United States' EEZ in 2014. Presidential Proclamation 9173, 79 Fed. Reg. 58,645 (Sept. 25, 2014). The Papahānaumokuākea Marine National Monument was also expanded to the boundary of the United States' EEZ in 2016. Presidential Proclamation 9478, 81 Fed. Reg. 60,227 (August 26, 2016).

These proclamations all exercise the United States' sovereign rights and jurisdiction within the EEZ while carefully avoiding running afoul of any of the country's obligations under international law. The proclamations all recognize the public interest in preserving the marine environment and the historic and scientific objects therein. In varying degrees the proclamations all exercise the United States' control over the EEZ through acts such as withdrawing the lands from any sale, leasing or other disposition, prohibiting commercial fishing, regulating scientific exploration and research, prohibiting energy development activities, and prohibiting the removal of any feature of the monument. Consistent with international law, the proclamations all direct

that the management plan and their implementing regulations "shall impose no restrictions on innocent passage in the territorial sea or otherwise restrict navigation and overflight or other internationally recognized lawful uses of the sea" in the monument." *Id.* While the 2006 proclamation establishing the Northwestern Hawaiian Islands Marine National Monument places various restrictions on access to the monument, the Bush administration was careful not to run afoul of the law of the sea, by providing that "[n]o restrictions shall apply to or be enforced against a person who is not a citizen, national, or resident alien of the United States (including foreign flag vessels) unless in accordance with international law." Presidential Proclamation 8031 (June 15, 2006).

V.   **The Northeast Canyons and Seamounts Marine National Monument**

The Northeast Canyons and Seamounts Marine National Monument is the newest marine monument and was established by presidential proclamation on September 15, 2016. Proclamation 9496, 81 Fed. Reg. 65161 (Sept. 21, 2016). Similar to its four predecessor marine national monuments, the establishment of the Monument under the Antiquities Act of 1906 was in accordance with international law. As with the four predecessor marine monuments, the designation of the Northeast Canyons and Seamounts Marine National Monument was carefully crafted so as to observe international law, as evidenced by both the physical parameters of the Monument and the restrictions and regulations placed on activities within the Monument.

First, the United States was careful to restrict the area of the Monument to its EEZ. The Monument is located within the United States' EEZ, as shown on the map below, which was included in the Proclamation. *See* 81 Fed. Reg. 65167. The boundary of the Monument extends up to the boundary of the United States' EEZ but no farther. *See id.* The seamounts included in the Monument are a part of the larger New England Seamount Chain, which runs from the southern side of Georges Bank to midway across the western Atlantic Ocean. 81 Fed. Reg.

65162. However, the Monument covers only the four seamounts within the U.S.'s EEZ. 81 Fed. Reg. 65162 ("Four of these seamounts—Bear, Physalia, Retriever, and Mytilus—are in the United States Exclusive Economic Zone.").



*Source: National Oceanic and Atmospheric Administration, First marine national monument created in Atlantic, http://www.noaa.gov/news/first-marine-national-monument-created-in-atlantic (last visited April 4, 2016).*

Second, the text of the Proclamation consistently recognizes and respects the role of the law of the sea. *See* 81 Fed. Reg. 65163 ("the United States continues to act with due regard for the rights, freedoms, and lawful uses of the sea enjoyed by other nations under the law of the sea in managing the canyon and seamount area"); 81 Fed. Reg. 65163 ("[t]his proclamation shall be applied in accordance with international law"). In issuing the Proclamation, the Obama administration was careful not to infringe on the rights of other States under the international law of the sea. For example, the Proclamation requires that management plans and implementing regulations "not unlawfully restrict navigation and overflight and other internationally recognized lawful uses of the sea in the monument." *Id.* This is consistent with Article 58 of UNCLOS, which states that, within the EEZ, all States enjoy the freedoms "of navigation and overflight and of the laying of submarine cables and pipelines, and other internationally lawful uses of the sea related to these freedoms." UNCLOS Art. 58.

The provisions of the Proclamation prohibiting and regulating certain activities in the Monument are consistent with UNCLOS. Consistent with Article 56, which gives the coastal State "sovereign rights for the purpose of exploring and exploiting . . . the natural resources…of the seabed and its subsoil" in the EEZ, the Proclamation prohibits exploring for or developing oil and gas or minerals in the Monument. UNCLOS Art. 56; 81 Fed. Reg. 65165. Similarly, Article 56 gives the coastal State "sovereign rights for the purpose of . . . conserving and managing the natural resources, whether living or non-living, of the waters superjacent to the seabed" and "jurisdiction . . . with regard to . . . the protection and preservation of the marine environment" and the Proclamation prohibits "fishing commercially" within the Monument and removing or harvesting any living or non-living resource. UNCLOS Art. 56; 81 Fed. Reg. 65165. Erasing any doubt, the Proclamation states that the prohibitions and regulations are to be applied "to the

extent consistent with international law." 81 Fed. Reg. 65164–65165.  The establishment and maintenance of the Northeast Canyons and Seamounts Marine National Monument is thus consistent with the international law of the sea and a valid exercise of the United States' sovereign rights and jurisdiction within the EEZ.

**CONCLUSION**

The establishment and management of the Monument is consistent with the United States' obligations and authority under the international law of the sea, as expressed in UNCLOS and customary international law and as interpreted and applied by the United States. The United States' EEZ, in which the Monument is located, clearly is (submerged) land controlled by the federal government.

Dated: May 4, 2018

>Respectfully Submitted,
>
>*/s/ Jessica L. Bayles*
>Jessica L. Bayles (DC Bar No. 1022484)
>McDermott Will & Emery LLP
>500 North Capitol Street, NW
>Washington, DC 20001
>Telephone: (202) 756-8265
>Email: jbayles@mwe.com
>
>Daniel E. Alberti (*pro hac vice pending*)
>McDermott Will & Emery LLP
>275 Middlefield Road, Suite 100
>Menlo Park, CA  94025
>Telephone: (650) 815-7419
>Email: dalberti@mwe.com
>
>David Quinn Gacioch (*pro hac vice pending*)
>McDermott Will & Emery LLP
>28 Sate Street
>Boston, MA 02109
>Telephone: (617) 535-4478
>Email: dgacioch@mwe.com
>
>*Counsel for Proposed Amici Professors Alison Rieser, Donna R. Christie, and Josh Eagle*